1

2

3

4

5

6

7

8

9

10                    UNITED STATES DISTRICT COURT

11                   EASTERN DISTRICT OF CALIFORNIA

12                          ----oo0oo----

13   WINNEMEM WINTU TRIBE, in their
     tribal and individual
14   capacities; CALEEN SISK
     FRANCO; MARK FRANCO, et al.
15                                        NO. CIV. 2:09-cv-01072-FCD EFB
             Plaintiffs,
16
         v.                               MEMORANDUM AND ORDER
17
     UNITED STATES DEPARTMENT OF
18   THE INTERIOR; BUREAU OF
     RECLAMATION; BUREAU OF INDIAN
19   AFFAIRS; BUREAU OF LAND
     MANAGEMENT; UNITED STATE
20   FOREST SERVICE; UNITED STATES
     DEPARTMENT OF AGRICULTURE;
21   and, in their Official and
     Individual Capacities, KENNETH
22   SALAZAR and TOM VILSACK,

23           Defendants.

24                          ----oo0oo----

25       This matter is before the court on defendants' motion to

26   dismiss plaintiffs' complaint pursuant to Federal Rule of Civil

27   Procedure 12(b)(1) and 12(b)(6).  The Winnemem Wintu Tribe,

28   Caleen Sisk Franco, and Mark Franco ("plaintiffs") oppose

defendants' motion.  For the reasons set forth below,[1]
defendants' motion is GRANTED in part and DENIED in part.

### BACKGROUND

Plaintiffs instituted this action seeking tort damages as well as declaratory and injunctive relief for alleged harm to various areas that the Winnemem Wintu Tribe (the "Winnemem") use as cultural and religious sites.  (Compl., filed Apr. 19, 2009, ¶¶ 100-04.)  Plaintiffs allege that the Winnemem is a California Native Tribe recognized by the California Native American Heritage Commission and identify Caleen Sisk-Franco as the current tribal leader of the Winnemem.  (Id. ¶¶ 19, 21.)  Mark Franco is allegedly a member of the Winnemem.  (Id. ¶ 1.)  The complaint names as defendants the United States Department of the Interior ("DOI"); Bureau of Reclamation ("BOR"); Bureau of Indian Affairs ("BIA"); Bureau of Land Management ("BLM"); United States Forest Service ("USFS"); United States Department of Agriculture ("USDA"); the current Secretary of the Interior Kenneth Salazar; and the current Secretary of Agriculture Tom Vilsack.

The Winnemem is not a federally recognized Indian tribe. (Id. ¶ 19.)  Plaintiffs allege that the U.S. government, through the BIA, made an error that resulted in the Winnemem's exclusion from the list of Indian tribes eligible to receive federal benefits.  (Id.)

Plaintiffs identify several USFS activities in five areas as the bases for their action.  First, in the Nosoni Creek area,

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

plaintiffs allege that in 2001 the USFS damaged an area of
cultural value to the Winnemem without regard to plaintiffs'
protests and in violation of an alleged prior project agreement
between the Winnemem and the USFS. (Id. ¶¶ 27-29.)
Specifically, plaintiffs allege the USFS cut down three ancient
"grandfather" grapevines that the Winnemem had used for medicinal
purposes, dumped dirt on a "sacred site" without the guidance of
any archeological monitoring or guidance, and rendered
inaccessible an area for ceremonial storytelling by bulldozing
and filling in a vegetated area. (Id.) Plaintiffs claim that
these actions were in violation of Section 106 of the National
Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f. (Id.)

Second, in the Dekkas area, plaintiffs allege that in 2005
the USFS ignored an agreement with the Winnemem by cutting
substantial quantities of old-growth manzanita trees that had
been the only source of wood used for a centuries-old religious
and cultural celebration. (Id. ¶ 32-33.) Plaintiffs allege
that, in 2006, the USFS facilitated entry of other people to the
area by removing a lock from a gate. (Id. ¶ 31.) Plaintiffs also
allege that the USFS ordered the Winnemem to remove their items
from the area in 2006. (Id. ¶ 34.) Defendants' activities at
Dekkas, plaintiffs claim, interfered with plaintiffs' use and
enjoyment of an area with religious significance to the Winnemem.
(Id. ¶¶ 30-34.)

Third, plaintiffs allege that the USFS failed to respond to
plaintiffs' request to protect the Coonrod area, a Winnemem
cultural site. (Id. ¶ 35.) Fourth, plaintiffs allege that the
USFS violated another agreement with the Winnemem by causing the

3

1   loss of culturally important medicinal plants in the Gilman Road
2   area.  (Id. ¶ 36.)  Finally, in the Buck Saddle area, plaintiffs
3   allege that the USFS breached a Memorandum of Understanding and
4   failed to include the Winnemem when conducting activities that
5   were "acts of deliberate desecration" in an area of religious
6   significance to the Winnemem.  (Id. ¶ 37.)

7        In addition to past activities, plaintiffs also complain of
8   future and threatened harms.  (Id. ¶ 39.)  Plaintiffs allege that
9   the USFS intends to build a parking lot over a village and burial
10  site at the Rocky Ridge area.  (Id.)  Plaintiffs also allege that
11  defendants will raise the level of Shasta Dam.  (Id. ¶ 40.)
12  Plaintiffs claim that the raised level will cause irreparable
13  damage to a number of areas that are culturally and religiously
14  significant to the Winnemem.  (Id.)  Defendants, however,
15  challenge plaintiffs' assertions that the relevant agencies have
16  already finalized these decisions.  (Defs.' Reply Supp. Mot.
17  Dismiss ("Defs.' Reply"), filed Aug. 14, 2009, at 8.)  Defendants
18  present evidence that the Shasta Dam project is still in the
19  feasibility study phase and that there are currently no plans to
20  build a parking lot in the Rocky Ridge area.  (Defs.' Ex. C, ¶ 4;
21  Defs.' Ex. E, ¶ 3.)

22       Plaintiffs assert various tort claims for damages to the
23  areas named in the complaint, claiming that defendants breached
24  duties owed to plaintiffs under federal law and state law.
25  (Compl. ¶¶ 2, 43-93.)  Plaintiffs also assert a claim for
26  mandamus and injunctive relief pursuant to 28 U.S.C. § 1361,
27  requesting an order that defendants investigate and report to
28  plaintiffs the extent that defendants' activities and planned

                                    4

activities have damaged and will damage Winnemem cultural sites along the McCloud River.  (Id. ¶¶ 97-98, 101.)  Additionally, plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201-02 that the defendants' actions constitute violations of federal, state, and common law.  (Compl. ¶¶ 94-95.)

Defendants move to dismiss plaintiffs' claims on the grounds that:  (1) plaintiffs lack Article III standing; (2) the court does not have subject matter jurisdiction to hear plaintiffs' complaint; and (3) plaintiffs fail to state a claim upon which relief can be granted.  (Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem."), filed June 29, 2009, at 1.)

**STANDARDS**

**A.   Lack Of Subject Matter Jurisdiction**

The Eleventh Amendment limits the subject matter jurisdiction of the federal courts.  See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 53-54 (1996).  Lack of subject matter jurisdiction may be asserted by either party or the court, sua sponte, at any time during the course of an action.  Fed. R. Civ. P. 12(b)(1).  Once challenged, the burden of establishing a federal court's jurisdiction rests on the party asserting the jurisdiction.  See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 912 (9th Cir. 1990).

There are two forms of 12(b)(1) attacks on subject matter jurisdiction: facial and factual attacks.  See Thornhill Publ'g Co. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  In a facial attack, a court construes jurisdictional allegations liberally and considers uncontroverted factual allegations to be true.  See Robinson v. Overseas Military Sales

1    Corp., 21 F.3d 502, 507 (2d Cir. 1994); Oaxaca v. Roscoe, 641

2    F.2d 386, 391 (5th Cir. 1981).  However, in an action such as

3    this, when the defendant refers to matters outside the complaint

4    to challenge plaintiff's assertion of subject matter

5    jurisdiction, the 12(b)(1) motion is a factual attack.  See Safe

6    Air v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a factual

7    attack, the district court may review affidavits or evidence

8    relating to the jurisdictional issue and need not presume the

9    truthfulness of the plaintiff's allegations.  Id.  The burden

10   then falls upon the party opposing the motion to present

11   affidavits or other evidence to establish subject matter

12   jurisdiction.  Id.

13   **B.   Failure To State A Claim**

14        On a motion to dismiss, the allegations of the complaint

15   must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322

16   (1972).  The court is bound to give the plaintiff the benefit of

17   every reasonable inference to be drawn from the "well-pleaded"

18   allegations of the complaint.  Retail Clerks Int'l Ass'n v.

19   Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

20   need not necessarily plead a particular fact if that fact is a

21   reasonable inference from facts properly alleged.  See id.

22        Nevertheless, it is inappropriate to assume that the

23   plaintiff "can prove facts which it has not alleged or that the

24   defendants have violated the . . . laws in ways that have not

25   been alleged."  Associated Gen. Contractors of Calif., Inc. v.

26   Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983).

27   Moreover, the court "need not assume the truth of legal

28   conclusions cast in the form of factual allegations."  United

6

1  States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

2  Cir. 1986).  Indeed, "[t]hreadbare recitals of the elements of a

3  cause of action, supported by mere conclusory statements, do not

4  suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(citing

5  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

6  　　　In ruling upon a motion to dismiss, the court may consider

7  only the complaint, any exhibits thereto, and matters which may

8  be judicially noticed pursuant to Federal Rule of Evidence 201.

9  See Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th

10 Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United

11 States, Inc., 12 F. Supp.2d 1035, 1042 (C.D. Cal. 1998).

12 　　　Ultimately, the court may not dismiss a complaint in which

13 the plaintiff alleged enough facts to "state a claim to relief

14 that is plausible on its face."  Iqbal, 129 S. Ct. at 1949

15 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

16 (2007)).  Only where a plaintiff has failed to "nudge [his or

17 her] claims across the line from conceivable to plausible," is

18 the complaint properly dismissed.  Id. at 1952.  When there are

19 well-pleaded factual allegations, "a court should assume their

20 veracity and then determine whether they plausibly give rise to

21 an entitlement to relief."  Id. at 1950.

22 　　　　　　　　　　　　　　　**ANALYSIS**

23 **A.   Article III Standing**

24 　　　Defendants argue that plaintiffs have no standing to bring

25 this suit.  Whether the plaintiff has standing to sue is a

26 threshold jurisdictional question.  Steel Co. v. Citizens for a

27 Better Env't, 523 U.S. 83, 102 (1998).  The "irreducible

28 constitutional minimum of standing" contains three requirements.

7

1    Id. at 102-03 (quoting Lujan v. Defenders of Wildlife, 504 U.S.

2    555, 560 (1992)).  First, the plaintiff must allege an injury-in-

3    fact that is concrete and particularized, and actual or imminent.

4    Id. at 103.  A particularized injury is one that "affect[s] the

5    plaintiff in a personal and individual way.  Lujan, 504 U.S. at

6    561 n.1.  Second, there must be a "fairly traceable connection

7    between the plaintiff's injury and the complained-of conduct of

8    the defendant."  Steel Co., 523 U.S. at 103.  And, third, "there

9    must be redressability – a likelihood that the requested relief

10   will redress the alleged injury."  Id.  The party invoking

11   federal jurisdiction bears the burden of establishing standing.

12   Lujan, 504 U.S. at 561.  However, at the pleading stage, "general

13   factual allegations of injury resulting from the defendant's

14   conduct may suffice" to establish constitutional standing.

15   Bennett v. Spear, 520 U.S. 154, 168 (1997) (quoting Lujan, 504

16   U.S. at 561).

17        Defendants argue only that plaintiffs cannot meet Article

18   III standing on the first standing requirement, that is,

19   plaintiffs have not sufficiently alleged injury-in-fact.[2]

20   (Defs.' Mem. at 6 & n.5.)  Defendants characterize plaintiffs'

21   injuries as injuries to tribal resources and properties.  (Id. at

22

23        [2]   Although defendants do not challenge the second and
     third requirements to establish Article III standing, the court
24   finds that plaintiffs' allegations are sufficient.  Plaintiffs
     identify the USFS and not an unnamed third party as the agency
25   actively carrying out the activities that caused injury to
     plaintiffs' interest.  (Compl. ¶¶ 27-37.)  Therefore, the harm
26   that plaintiffs complain of is fairly traceable to one of the
     defendants' conduct.  Interpreting their claims for declaratory
27   and injunctive relief liberally, the court may also give
     effective relief by requiring that any future agency action
28   complies with the relevant statutes.

                                    8

6.)  Defendants argue that, as the Winnemem is not a federally
recognized Indian tribe, the Winnemem do not have legally
recognized ownership interest in the properties at issue and
therefore, cannot prove that plaintiffs have suffered an injury-
in-fact.  (Id.)  As such, defendants' contention that there is no
injury-in-fact is premised solely upon the existence of legal
interests which, in this case, are contingent upon federal
recognition of the Winnemem as an Indian tribe.

     However, injury to a legal interest is not the only basis
for alleging an injury-in-fact.  In environmental cases, when a
plaintiff alleges that the defendant's activity diminished
plaintiff's aesthetic and recreational interests or destroyed a
connection to the area that makes life more enjoyable, the
plaintiff sufficiently pleads injury-in-fact.  See, e.g., Friends
of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S.
167, 183 (2000) (holding that environmental plaintiffs adequately
allege injury-in-fact when they aver that they use the affected
area and are persons "for whom the aesthetic and recreational
values of the area will be lessened" by the challenged activity);
Ocean Advocates v. United States Army Corps of Eng'rs, 402 F.3d
846, 859 (9th Cir. 2005) (stating that injury-in-fact is
established by "showing a connection to the area of concern
sufficient to make credible the contention that the person's
future life will be less enjoyable").  Alleging cultural and
religious ties to an area that suffers an environmental impact
due to a defendant's activity can be an adequate demonstration of
injury-in-fact for standing purposes.  See Pit River Tribe v.
United States Forest Serv. 469 F.3d 768, 779 (9th Cir.

9

1   2006)(holding that plaintiffs adequately pled injury-in-fact to

2   allege statutory violations under the National Environmental

3   Policy Act because plaintiffs had used the affected areas for

4   cultural and religious ceremonies for countless generations).

5   In this action, plaintiffs' allegations in the complaint

6   present a sufficient showing of injury-in-fact at the pleading

7   stage.  See Bennett v. Spear, 520 U.S. at 168 ("general factual

8   allegations of injury resulting from the defendant's conduct may

9   suffice").  Plaintiffs allege that, as a result of USFS

10  activities, plaintiffs can no longer enjoy particular uses of

11  medicinal plants, other plant life, and areas where plaintiffs

12  have had long-standing cultural and religious ties.  (Compl. ¶¶

13  27-37.)  Plaintiffs have adequately alleged that defendants'

14  activities adversely affected plaintiffs' interests.[3]  The lack

15  of federal recognition of tribal status, therefore, does not bar

16  plaintiffs in this case from adequately alleging an injury-in-

17  fact when plaintiffs generally allege that USFS activities

18  diminished plaintiffs' enjoyment of areas where plaintiffs have

19  had long-standing cultural and religious ties.  See Golden Hill

20  Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 58 (2d Cir.

21  1994)(holding that a non-federally recognized Indian tribe had

22  standing to bring suit when it sufficiently pled the elements of

23  Nonintercourse Act, which was the foundation of its claim).

24  Defendants' reliance on Western Shoshone Bus. Council v.

25  Babbitt, 1 F.3d 1052 (10th Cir. 1993), and United States v. 43.47

26
27      [3]     The court need not reach the merits of plaintiffs'
        assertion that there is a lower threshold for alleging injury-in-
        fact in cases involving severe harm to land used for tribal
28      ceremonies or practices.

1   Acres of Land More or Less, 855 F.Supp. 549 (D.Conn. 1994) is

2   unpersuasive.   In Western Shoshone, the plaintiffs' lack of

3   standing to sue was premised on a different issue; they did not

4   have prudential standing to sue because they were not within the

5   zone of interests of 25 U.S.C. § 81, the statute that they had

6   invoked.   Western Shoshone Bus. Council, 1 F.3d at 1058.   In

7   43.47 Acres of Land, the plaintiffs expressly invoked the Indian

8   Nonintercourse Act, an act relating to the conveyance of Indian

9   tribal lands.   43.47 Acres of Land More or Less, 855 F.Supp. at

10  551.   There, the court denied the plaintiffs' standing to sue

11  specifically under the Act.   Id.   Here, plaintiffs do not assert

12  any claims under the Nonintercourse Act and, as set forth infra,

13  they allege harms within the zone of interests of the relevant

14  statutes.   Accordingly, neither 43.47 Acres of Land nor Western

15  Shoshone support defendants' proposition that federal recognition

16  is a mandatory prerequisite before plaintiffs can allege an

17  injury-in-fact based on cultural and religious interests.

18      Further, defendants' contention that plaintiffs' standing is

19  wholly dependent on federal recognition of tribal status is

20  flawed because, under Section 106 of the NHPA, any member of the

21  public has an interest in whether a federal agency takes into

22  account the effect of an undertaking on any site that implicates

23  historic preservation concerns.   See 16 U.S.C. § 470f; 36 C.F.R.

24  §§ 800.1; 800.2(d)(1)-(2).   The Code of Federal Regulations

25  interpret Section 106 to require federal agencies to "seek and

26  consider the views of the public" and "provide the public with

27  information about an undertaking and its effects on historic

28  properties and seek public comment and input."   See 36 C.F.R. §

11

800.2(d)(1)-(2).  Plaintiffs allege that they have an interest under the NHPA in preserving the historical quality of the areas named in the complaint.  Plaintiffs also allege that the USFS violated prior agreements and the Memorandum of Understanding by not seeking plaintiffs' comments and ignoring plaintiffs' input before undertaking the activities that allegedly damaged the cultural value of the affected areas.  These general factual allegations are sufficient to show injury-in-fact.  See Bennett, 520 U.S. at 168 ("on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim"); see also Mont. Wilderness Ass'n v. Fry, 310 F. Supp. 2d 1127, 1151 (D. Mont. 2004)(holding that plaintiff had sufficiently alleged facts supporting Article III standing under the NHPA because plaintiff averred that he had visited sites of traditional cultural significance and planned to do so each year in the future; these sites were impacted by the agency's failure to consult with the people of his people).[4]

Accordingly, the court finds that plaintiffs have sufficiently alleged Article III standing to proceed with their complaint.

**B.   Subject Matter Jurisdiction**

Defendants argue that the court does not have jurisdiction to hear plaintiffs' claims because plaintiffs have not met the jurisdictional prerequisites to file an action through the

---

[4]    As this interest granted by the NHPA includes individuals as members of the public, the Francos' allegations of the same injury-in-fact allow them to bring this action.

12

1  Administrative Procedures Act ("APA"), 5 U.S.C. § 702, or the

2  Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).[5]

3       **1.   <u>APA</u>**

4       Defendants challenge plaintiffs' right to seek judicial

5  relief through the APA.  While the APA does not provide an

6  independent basis for subject matter jurisdiction, it provides a

7  waiver of sovereign immunity in actions seeking judicial review

8  of a federal agency action.  <u>Gallo Cattle Co. v. United States</u>

9  <u>Dep't of Agric.</u>, 159 F.3d 1194, 1198 (9th Cir. 1998).  For

10 actions such as this, where plaintiffs appear to be seeking

11 statutory enforcement of agency actions, the federal court has

12 jurisdiction pursuant to 28 U.S.C. § 1331.  <u>Id.</u>

13      To bring this suit under the APA, the plaintiffs must meet

14 the APA's statutory requirements for prudential standing.  <u>See</u>

15 <u>Churchill County v. Babbitt</u>, 150 F.3d 1072, 1078 (9th Cir. 1998).

16 The plaintiffs must show that (1) there has been final agency

17 action which adversely affected them and, (2) as a result, their

18 injury falls within the "zone of interests" of the statutes they

19 claim were violated.  5 U.S.C. § 702; <u>Churchill County</u>, 150 F.3d

20 at 1078.  Defendants argue that plaintiffs fail on both fronts.

21 (Defs.' Mem. at 18.)

22      Plaintiffs assert that they have alleged "multiple agency

23 actions of a final nature" in which defendants have violated

24 various federal statutes.  (Pls.' Opp'n Mot. Dismiss ("Pls.'

25

26       [5]   Plaintiffs acknowledge that, of the bases for
   jurisdiction cited in the complaint, only the APA and the FTCA
27 provide waivers of sovereign immunity to grant the court
   jurisdiction to hear this action.  (Pls.' Opp'n Mot. Dismiss,
28 filed Aug. 7, 2009, at 1.)

1  Opp'n"), filed Aug. 7, 2009, at 9.)  However, liberally

2  construing plaintiffs' allegations, plaintiffs only have

3  sufficiently pled facts that constitute violations of Section 106

4  of the NHPA.[6]  Therefore, the court looks only at the allegations

5  relating to the NHPA to assess whether plaintiffs have

6  jurisdiction to proceed under the APA.

7              **a.   Final Agency Action**

8       "[F]inality is a jurisdictional requirement to obtaining

9  judicial review under the APA."  <u>Fairbanks North Star Borough v.</u>

10  <u>U.S. Army Corps of Eng'rs</u>, 543 F.3d 586, 591 (9th Cir. 2008),

11  <u>cert. denied</u>, 2009 U.S. LEXIS 4621 (June 22, 2009).  "Two

12  conditions must be satisfied for agency action to be final:

13  First, the action must mark the consummation of the agency's

14  decisionmaking process--it must not be of a merely tentative or

15  interlocutory nature.  And, second, the action must be one by

16  which rights or obligations have been determined, or from which

17  legal consequences will flow."  <u>Id.</u> (quoting <u>Bennett</u>, 520 U.S. at

18  177-78).

19       Defendants argue that plaintiffs have not been aggrieved by

20  final agency actions because the relevant agencies have not made

21  any decisions regarding the proposals to build a parking lot at

22

23       [6]   Plaintiffs allege that the USFS revoked a special use
    permit that interfered with their use of the Dekkas area but do
24  not allege any other fact that can explain why it is a legal
    violation.  (Compl. ¶ 30.)

25       Further, plaintiffs' other allegations only make
    conclusory assertions that defendants violated various federal
26  and state statutes without any clarity regarding the bases of
    their claims.  Because, as set forth *infra*, the court finds that
27  plaintiffs sufficiently alleged an APA claim arising under the
    NHPA, the court will allow plaintiffs to amend their complaint to
28  clarify their other bases for relief.

1  the Rocky Ridge village site or raise the level of Shasta Dam.
2  (Defs.' Mem. at 18.)  Defendants also assert that these issues
3  are not ripe for review.  (Id.)

4      However, defendants' arguments do not address plaintiffs'
5  allegations regarding the USFS activities.  The allegations
6  describing how the USFS violated agreements or failed to consult
7  with the Winnemem before it carried out activities in the named
8  areas are not allegations of agency decisions that are "merely
9  tentative or interlocutory."  As a result of defendants'
10  activities, plaintiffs allegedly lost the traditional uses of
11  certain cultural sites, were deprived of the opportunity to give
12  public comment or input, and had their rights under the
13  agreements and Memorandum of Understanding violated.  Not only do
14  these alleged activities describe the "consummation of a
15  decisionmaking process," they also denied plaintiffs the right to
16  participate as persons interested in the historical preservation
17  of the named areas.  Cf. Dugong v. Gates, 543 F. Supp. 2d 1082,
18  1091-93 (N.D. Cal. 2008) (holding that an obligation under NHPA
19  to take into account the effect of a construction project on an
20  animal species before pursuing that undertaking is a discrete
21  agency action and the failure to do so while approving design and
22  construction plans was a "final agency action").  Construing
23  plaintiffs' allegations liberally, the court finds that
24  plaintiffs meet the first requirement of prudential standing
25  under the APA.  Because plaintiffs allegedly already have been
26  aggrieved by these agency actions, the issues that relate to the
27  NHPA are also ripe for review.

28

1           b.    Zone Of Interests

2       The second prudential standing requirement to assert a claim

3  under the APA is meeting the "zone of interests" test.  See

4  Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934, 940 (9th Cir.

5  2005).  The "zone of interests" test is "not meant to be

6  particularly demanding" and is used simply to determine whether

7  the plaintiffs' interests have more than a marginal relationship

8  to the purpose implicit in the statute at issue.  See Ashley

9  Creek Phosphate Co., 420 F.3d at 940; Cent. Ariz. Water

10 Conservation Dist. v. United States EPA, 990 F.2d 1531, 1538-39

11 (9th Cir. 1993); Nat'l Wildlife Fed'n v. Burford, 871 F.2d 849,

12 852 (9th Cir. 1989).  A plaintiff's interest falls outside the

13 "zone of interests" protected by a statute when the plaintiff's

14 interest is inconsistent with the purposes of the statute and

15 that interest is so inconsistent that it would be unreasonable to

16 assume that Congress intended to permit the suit.  Cf. Presidio

17 Golf Club v. Nat'l Park Serv., 155 F.3d 1153, 1158 (9th Cir.

18 1998)(describing what would constitute failure to come within the

19 zone of interests of the National Environmental Protection Act).

20 Defendants contend that plaintiffs do not meet this second

21 requirement because plaintiffs are not a federally recognized

22 Indian tribe.  (Defs.' Mem. at 18.)

23     Here, plaintiffs allege that defendants' agency actions

24 violate section 106 of the NHPA.  (Compl. ¶¶ 28-29.)  Congress

25 enacted NHPA in part because "the historical and cultural

26 foundations of the Nation should be preserved as a living part of

27 our community life and development in order to give a sense of

28 orientation to the American people."  16 U.S.C. § 470(b)(2).  In

16

order to carry out NHPA's objectives, Section 106 of the NHPA places a responsibility on federal agencies to consider the effect of an undertaking on any site that is eligible for inclusion in the National Register.  16 U.S.C. § 470f.  The relevant agencies should make this consideration prior to the approval of the expenditure of any Federal funds on the undertaking or before issuing any licenses.  Id.  When an undertaking may affect properties of historic value to an Indian tribe on non-Indian lands, the regulations interpreting NHPA require that the Indian tribe be afforded the opportunity to participate as interested persons.  36 C.F.R. § 800.1(c)(2)(iii); see Muckleshoot Indian Tribe v. United States Forest Serv., 177 F.3d 800, 806 (9th Cir. 1999).  NHPA's regulations also require federal agencies to provide interested members of the public reasonable opportunity to participate in the section 470f process. 36 C.F.R. §§ 800.1(a), 800.2(a)(4), (d)(1).

Plaintiffs assert that the Winnemem have used the affected areas as cultural and religious sites for generations and that the USFS activities are interfering with the historical preservation and continued cultural use of these sites.  (Compl. ¶¶ 27-37).  Plaintiffs also claim that the USFS conducted these activities without consulting plaintiffs and in direct violation of agreements they had made with plaintiffs.  (Id.)  Given that the NHPA's purpose is to preserve the historical and cultural foundations of this Nation and to do so with public input, the court cannot find at this point in the litigation that the plaintiffs' interests are so inconsistent with the NHPA that it would be unreasonable to assume that Congress would permit this

17

suit.[7]  Cf. Presidio Golf Club, 155 F.3d at 1158 (holding that maintaining a historic golfhouse and the surrounding environment in a fashion suitable for golf was arguably within the zone of interests protected by the APA).

Accordingly, to the extent that plaintiffs' claims are related to Section 106 of the NHPA, defendants' motion to dismiss plaintiffs' claims on the ground of lack of subject matter jurisdiction is DENIED.

## 2.  FTCA

Defendants also argue that this court lacks jurisdiction to hear plaintiffs' tort claims under the FTCA.  Defendants argue that plaintiffs' claims are barred because they failed to exhaust their administrative remedies and that the tort-claims are time-barred.[8]  (Defs.' Mem. at 9-11.)

The FTCA contains a limited waiver of sovereign immunity that authorizes certain civil tort suits for money damages

---

[7]    The court notes that the Ninth Circuit cases that apply the NHPA have not yet addressed what constitutes an "Indian tribe" for purposes of the Act; all relevant cases involve plaintiff tribes that had federal recognition.  See e.g. Navajo Nation v. United States Forest Serv., 479 F.3d 1024 (9th Cir. 2007); San Carlos Apache Tribe v. United States, 417 F.3d 1091 (9th Cir. 2005); Muckleshoot Indian Tribe, 177 F.3d 800. However, plaintiffs have alleged that, at the very least, they are interested members of the public who have a right to participate in any undertaking relating to these affected sites. "[A]ny member of the public who can demonstrate sufficient interest in the preservation of the historical lands at issue falls within the zone of interests protected by the NHPA."  Mont. Wilderness Ass'n, 310 F. Supp. 2d at 1151.  Accordingly, the court need not reach this issue.

[8]    Defendants also contend that federal agencies are not proper parties to FTCA claims.  Because, as set forth infra, the court grants defendants' motion based upon plaintiffs' failure to exhaust administrative remedies and to meet the statute of limitations, the court does not reach the merits of this argument.

18

1  against the U.S. government.  <u>See</u> <u>Vacek v. United States Postal</u>
2  <u>Serv.</u>, 447 F.3d 1248, 1250 (9th Cir. 2006).  Specifically, the
3  FTCA grants federal courts jurisdiction to hear claims for
4  damages for injury or loss of property that is caused by the
5  negligent or wrongful act or omission of any federal employee
6  while acting within the scope of his office or employment, under
7  circumstances where the United States, if a private person, would
8  be liable to the claimant according to the law of the place where
9  the act or omission occurred.  28 U.S.C. § 1346(b).

10      However, the FCTA imposes jurisdictional prerequisites that
11  limits the court's power to hear these civil suits.  The
12  plaintiff must comply with 28 U.S.C. § 2675 by presenting an
13  administrative claim to the appropriate agency and having the
14  claim finally denied in writing before filing in federal court.
15  <u>Blair v. IRS</u>, 304 F.3d 861, 864-65 (9th Cir. 2002); <u>Brady v.</u>
16  <u>United States</u>, 211 F.3d 499, 502-03 (9th Cir. 2000).  For the
17  purposes of Section 2675, the claimant must give written notice
18  of the injury and the harm suffered and request money damages in
19  a sum certain.  <u>See</u> <u>Warren v. United States Dep't of Interior</u>
20  <u>Bureau of Land Mgmt.</u>, 724 F.2d 776, 780 (9th Cir. 1984)(en banc);
21  <u>Blair</u>, 304 F.3d at 865.  While the notice requirement is minimal,
22  it should put the agency on notice of every essential feature of
23  the claimant's case to allow the agency to investigate and, if
24  possible, settle the claim before the matter goes to court.  <u>See</u>
25  <u>Goodman v. United States</u>, 298 F.3d 1048, 1055 (9th Cir. 2002);
26  <u>Brady</u>, 211 F.3d at 503.

27      District courts do not have the discretionary power to waive
28  compliance with the claim requirement, including the requirement

that the claim state a sum certain.  See <u>Vacek</u>, 447 F.3d at 1250
(explaining that the exhaustion requirement was jurisdictional
and must be interpreted strictly such that the court was "not
allowed to proceed in the absence of fulfillment of the
conditions merely because dismissal would visit a harsh result
upon the plaintiff"); <u>Blair</u>, 304 F.3d at 865 ("[T]here is a
jurisdictional requirement of a "sum certain" that comes from 28
U.S.C. § 2675."); <u>Brady</u>, 211 F.3d at 502-03 (holding that a
previously-dismissed judicial complaint, even though giving
notice to the relevant agency of the injury and the damages
sought, was insufficient to grant subject matter jurisdiction for
the court to hear a second judicial complaint because the
plaintiff did not first file an administrative claim with the
agency).  Even the futility of filing an administrative claim
does not excuse a plaintiff from meeting this jurisdictional
prerequisite because it is a limitation that is imposed by
Congress.  See <u>Nero v. Cherokee Nation of Okla.</u>, 892 F.2d 1457,
1463 (10th Cir. 1989).  "Where such a claim is not first
presented to the appropriate agency, the district court, pursuant
to Federal Rule of Civil Procedure 12(b)(1), must dismiss the
action for lack of subject matter jurisdiction." <u>Goodman</u>, 298
F.3d at 1054-55.

The Ninth Circuit supports a generous interpretation of what
constitutes written notice to the agency.  However, the grounds
for relief pled in the judicial complaint must, at least, arise
out of the same body of facts alleged in the administrative
claim.  See, <u>e.g.</u>, <u>Goodman</u>, 298 F.3d at 1056-57 (holding that
plaintiff reasonably included sufficient facts to give notice of

an informed consent claim when he alleged in his administrative
claim that his wife died because of the agency's mistakes during
a medical procedure); <u>Rooney v. United States</u>, 634 F.2d 1238,
1243 (9th Cir. 1980)(holding that allegations in administrative
claim that injuries were caused by a fall and the subsequent
medical care broadly put the government on notice for the
judicial claim that the government's negligence caused the fall).

In response to defendants' factual attack on subject matter
jurisdiction, plaintiffs proffer only the letter from Assembly
Member Jared Huffman to the Department of the Interior as
evidence that they have complied with FTCA's claim requirement.
(Letter from Jared Huffman, Assembly Member of California's Sixth
District, to Dick Kempthorne, Secretary of the Interior (May 15,
2007) (Pls.' Exhibit A).)  Mr. Huffman's letter to the Department
of Interior does not meet the claim presentment requirements.
The thrust of the letter is that the department's "series of
clerical errors" led to the Winnemem's exclusion from the list of
recognized tribes, resulting in a loss of federal benefits.
However, plaintiffs' complaint, even under a broad reading, does
not ask the court to redress the loss of federal benefits.
Further, the letter does not refer to any damages caused to the
areas identified in the complaint, much less put a monetary value
on the damages.

Plaintiffs urge the court for a more forgiving
interpretation of FTCA's jurisdictional limitation.  They argue
that Congress did not intend Section 2675(a) to pose procedural
hurdles or a barrier of technicalities to potential litigants;
Section 2675(a)'s purpose is simply to facilitate early

disposition of claims.  (Pls.' Supplemental Mot. Dismiss ("Pls.'
Supplemental"), filed Aug. 26, 2009, at 1.)  Plaintiffs emphasize
that the presentment requirements imposed by Section 2675(a) are
"minimal."  (Id. at 2.)

The cases that the plaintiffs cite do not support their
proposition that the barest minimum of information suffices to
meet Section 2675.  In Burchfield v. United States, 168 F.3d 1252
(11th Cir. 1999), the plaintiff's judicial claim was closely
related to the facts alleged in his administrative claim.  In his
administrative claim, the plaintiff alleged that government
doctors negligently prescribed a particular drug that caused
osteoporosis as a side-effect.  Id. at 1254.  In his judicial
claim, he alleged that, during the same time period mentioned in
the administrative claim, the doctors failed to diagnose and
treat osteoporosis properly.  Id.  Similarly, in Adams v. United
States, 615 F.2d 284, 285-86 (5th Cir. 1980), both the
administrative claim and the judicial complaint sought damages
stemming from the same incident, that is, negligent prenatal and
delivery care.  Furthermore, in Brown v. United States, 838 F.2d
1157, 1161 (11th Cir. 1988), the court allowed the plaintiff's
counsel to add a new cause of action that accrued after the
administrative claims had been denied because the government's
liability was based on the same facts presented in the
administrative claim.  The plaintiff in Brown had sought damages
arising from the negligent failure to diagnose tongue and throat
cancer but died before his judicial claim reached trial,
prompting his counsel to add a wrongful death cause of action to
the judicial claim.  Id. at 1158-59.  In all these cases, the

1   plaintiffs' judicial claims arose from the same body of facts

2   that were alleged in their administrative claims.

3        Unlike <u>Goodman</u>, <u>Rooney</u>, <u>Burchfield</u>, and <u>Adams</u>, the injury

4   here arising from the allegations in Mr. Huffman's letter is not

5   the same injury for which plaintiffs seek judicial redress.

6   Unlike <u>Brown</u>, defendants' liability here is premised on a

7   different body of facts from the facts alleged in Mr. Huffman's

8   letter.  Defendants, upon receiving Mr. Huffman's letter, could

9   not have been put on notice of the tort claims arising from USFS

10  activity or the sum certain that plaintiffs now seek.[9]  Without

11  the essential features of plaintiffs' tort claims that are

12  asserted in the complaint, defendants could not have investigated

13  and settled the claims before plaintiffs instituted this action.

14  <u>See</u> <u>Brady</u>, 211 F.3d at 503.  Therefore, as plaintiffs do not meet

15  the notice and sum certain requirements of Section 2675, the

16  court does not have subject matter jurisdiction to hear

17  plaintiffs' tort claims.

18       However, even if the court were to find that Mr. Huffman's

19  letter suffices for purposes of Section 2675, plaintiffs also

20  fail to meet the statute of limitations for filing a FTCA claim.

21  "A district court does not have jurisdiction to hear a tort claim

22  against the United States unless the claimant files a complaint

23  in federal court within six months after the final agency

24

25       [9]    The court does not address whether Mr. Huffman's letter
26  could have met the claim presentment requirements, including the
    sum certain requirement, for an action seeking damages for the
27  loss of benefits due to the alleged series of clerical errors
    because plaintiffs do not assert a cause of action based on that
28  agency action.  Moreover, as set forth *infra*, such a claim would
    likely be barred by the statute of limitations.

1   decision." <u>Goodman</u>, 298 F.3d at 1053; 28 U.S.C. § 2401(b).

2   Ninth Circuit precedent holds that the six-month statute of

3   limitations in Section 2401(b) is jurisdictional and not subject

4   to doctrines of equitable estoppel or equitable tolling.  <u>See</u>

5   <u>Marley v. United States</u>, 567 F.3d 1030, 1038 (9th Cir. 2009).

6        Plaintiffs point to the letter dated May 23, 2007 from the

7   Department of Interior to Mr. Huffman as evidence of final agency

8   action.  (Pls.' Supplemental at 3; Letter from Director, Office

9   of Federal Acknowledgment, Department of the Interior, to Jared

10  Huffman, Assembly Member of California's Sixth District (May 23,

11  2007) (Pls.' Ex. A).)  However, plaintiffs filed the complaint on

12  April 19, 2009, almost two years after the Department of

13  Interior's reply.  Assuming the Department of Interior's letter

14  constituted sufficient evidence of final agency action,

15  plaintiffs still fail to satisfy the six-month statute of

16  limitation that Section 2401(b) requires.

17       Plaintiffs seek the court's leave to amend if there are

18  deficiencies in the complaint.  However, when opposing a factual

19  attack on subject matter jurisdiction, plaintiffs bear the burden

20  to present evidence or affidavits establishing subject matter

21  jurisdiction.  <u>See Safe Air Meyer</u>, 376 F.3d at 1039.  Other than

22  Mr. Huffman's letter to the Secretary of Interior, plaintiffs

23  have not put forward evidence of an administrative claim relating

24  to tort claims asserted in the complaint, thus failing to meet

25  their burden with respect to both the exhaustion requirement and

26  the statute of limitations.  As plaintiffs' tort claims were not

27  first presented to the appropriate agency, the court's

28  jurisdiction is limited.  Leave to amend will not cure this

deficiency.   Therefore, the court must dismiss the action for lack of subject matter jurisdiction.  See Goodman, 298 F.3d at 1054-55.

Accordingly, defendants' motion to dismiss the tort claims for lack of subject matter jurisdiction is GRANTED without leave to amend.[10]

**C.   Failure to State a Claim Upon Which Relief Can Be Granted**

Defendants argue that plaintiffs' claims for equitable relief fail to state plausible claims that give defendants fair notice of the grounds upon which plaintiffs' claims are based. Defendants also argue that plaintiffs fail to state cognizable claims against Mr. Salazar and Mr. Vilsack.

**1.   Equitable Relief Claims**

Plaintiffs seek a declaratory judgment that defendants' actions constitute violations of federal, state, and common law. (Compl. ¶ 95.)  Plaintiffs also seek injunctive relief through a judicial order that will direct defendants to investigate and report the extent their activities and planned activities have damaged and will damage sites along the McCloud River that have cultural significance to the Winnemem.  (Id. ¶ 101.)

Defendants argue that plaintiffs cannot seek injunctive relief because plaintiffs do not specify which "activities and planned activities" are the subject of their request for relief, thus not giving defendants fair notice of the grounds on which the claims are based.  (Defs.' Mem. at 19.)  However, a court may

_____

[10]   As plaintiffs do not meet the claim presentment requirements or the statute of limitations to bring FTCA claims, the court need not address the plaintiffs' failure to name the United States as the proper party.

1 not dismiss a complaint in which the plaintiff alleged enough

2 facts to "state a claim that is plausible on its face." <u>Iqbal</u>,

3 129 S. Ct. At 1949.   At this stage in the pleadings, the court

4 must assume the truth of plaintiffs' allegations, that is, the

5 USFS violated agreements and ignored plaintiffs' input before

6 affecting areas of cultural significance to the Winnemem.   <u>See</u>

7 <u>Cruz</u>, 405 U.S. at 322 ("the allegations of the complaint must be

8 accepted as true").   As set forth, *supra*, these factual

9 allegations give rise to plausible claims of NHPA violations.

10 Accordingly, defendants' motion to dismiss plaintiffs' NHPA based

11 claims for equitable relief is DENIED.

12 However, plaintiffs also make conclusory assertions that

13 defendants violated other federal and state statutes through

14 agency actions.   As to these other statutes, the court cannot

15 reasonably infer from plaintiffs' allegations whether or how

16 defendants have violated such statutes.   If plaintiffs seek

17 alternative grounds for relief for such agency actions, the court

18 grants plaintiffs leave to amend.

19 **2.   <u>Individual Claims</u>**

20 Plaintiffs also bring claims against Mr. Salazar and Mr.

21 Vilsack in their official and individual capacities under 42

22 U.S.C. § 1983 and purportedly under <u>Bivens v. Six Unknown Named</u>

23 <u>Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

24 Plaintiffs only allege that Mr. Salazar and Mr. Vilsack violated

25 plaintiffs' constitutional rights by actively continuing policies

26 of the prior federal administration.   (Compl. ¶¶ 11, 12.)   The

27 allegations against Mr. Salazar and Mr. Vilsack are insufficient

28 and do not give defendants fair notice of the grounds upon which

1  plaintiffs' claims are based.  Accordingly, defendants' motion to

2  dismiss the claims against Mr. Salazar and Mr. Vilsack is GRANTED

3  with leave to amend.

**CONCLUSION**

5      For the foregoing reasons, defendants' motion to dismiss is

6  GRANTED in part and DENIED in part.

7      (1)  Defendants' motion to dismiss plaintiffs' equitable

8           relief claims under the APA is DENIED.

9      (2)  Defendants' motion to dismiss plaintiffs' tort claims

10          under the FTCA for lack of subject matter jurisdiction

11          is GRANTED without leave to amend.

12     (3)  Defendants' motion to dismiss plaintiffs' individual

13          claims against Mr. Vilsack and Mr. Salazar for failure

14          to state a cognizable claim is GRANTED with leave to

15          amend.

16     Plaintiffs are granted fifteen (15) days from the date of

17  this order to file an amended complaint in accordance with this

18  order.  Defendants are granted thirty (30) days from the date of

19  service of plaintiffs' amended complaint to file a response

20  thereto.

21     IT IS SO ORDERED.

22  DATED: September 14, 2009

23  _____

24  FRANK C. DAMRELL, JR.
    UNITED STATES DISTRICT JUDGE

25

26

27

28

27