UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

WINNEMEM WINTU TRIBE, in their
tribal and individual
capacities; CALEEN SISK
FRANCO; MARK FRANCO, et al.

                 NO. CIV. 2:09-cv-01072-FCD EFB

      Plaintiffs,

   v.                   MEMORANDUM AND ORDER

UNITED STATES DEPARTMENT OF
THE INTERIOR; BUREAU OF
RECLAMATION; BUREAU OF INDIAN
AFFAIRS; BUREAU OF LAND
MANAGEMENT; UNITED STATES
FOREST SERVICE; UNITED STATES
DEPARTMENT OF AGRICULTURE;
and, in their Individual
Capacities, KRISTY COTTINI and
J. SHARON HEYWOOD,

      Defendants.

----oo0oo----

This matter is before the court on motions to dismiss

plaintiffs' first amended complaint by defendants the United

States Department of the Interior ("DOI"), Bureau of Reclamation

("BOR"), Bureau of Indian Affairs ("BIA"), Bureau of Land

1   Management ("BLM"), United States Forest Service ("USFS"), and
2   United States Department of Agriculture ("USDA") (collectively,
3   "the agency defendants") and District Ranger for the Shasta-
4   Trinity National Recreation Area, Kristy Cottini, and Forest
5   Supervisor for Shasta-Trinity National Forest, J. Sharon Heywood
6   (collectively, "the individual defendants").  Defendants move to
7   dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and
8   12(b)(6).  The Winnemem Wintu Tribe, Caleen Sisk Franco, and Mark
9   Franco ("plaintiffs") oppose defendants' motion.  For the reasons
10  set forth below,[1] defendants' motion is GRANTED in part and
11  DENIED in part.

12                          **BACKGROUND**

13      Plaintiffs filed their initial complaint on April 19, 2009,
14  asserting various tort claims under the Federal Tort Claims Act
15  ("FTCA") against the agency defendants and against Secretary of
16  the Interior Kenneth Salazar and Secretary of Agriculture Tom
17  Vilsack.  (Compl. ¶¶ 2, 43-93.)  Plaintiffs also
18  asserted a claim for mandamus and injunctive relief pursuant to
19  28 U.S.C. § 1361, requesting an order directing the defendants to
20  investigate and report on damage allegedly caused to sites of
21  cultural importance to the Winnemem Wintu Tribe (the "Winnemem")
22  along the McCloud River.  (Id. ¶¶ 97-98, 101.)  Finally,
23  plaintiffs sought a declaratory judgment pursuant to 28 U.S.C. §§
24  2201-02 that various actions by the defendants constituted
25  violations of federal, state, and common law.  (Id. ¶¶ 94-95.)

26

27      [1]   Because oral argument will not be of material
28  assistance, the court orders this matter submitted on the briefs.
    E.D. Cal. L.R. 230(g).

                                2

On June 29, 2009, the defendants filed a motion to dismiss
pursuant to Federal Rule of Civil Procedure 12(b)(1) and
12(b)(6).  The court issued a Memorandum and Order on September
14, 2009, granting in part and denying in part the defendants'
motion (the "Order").

In an amended complaint, filed October 14, 2009, plaintiffs
reorganized their allegations to assert claims against the agency
defendants pursuant to the Administrative Procedures Act ("APA"),
5 U.S.C. § 551 *et seq.*, for alleged violations of various federal
statutes and the United States Constitution.  (Amend. Compl. ¶¶
75-146.)  Plaintiffs also bring a claim pursuant to <u>Bivens v. Six
Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S.
388 (1971), against defendants Cottini and Heywood in their
individual capacities, seeking monetary damages for alleged
violations of plaintiffs' First Amendment and Fifth Amendment
rights.  (<u>Id.</u> ¶¶ 147-53.)

Plaintiffs allege that the Winnemem are a California Native
Tribe recognized by the California Native American Heritage
Commission and identify Caleen Sisk-Franco as the current tribal
leader of the Winnemem.  (<u>Id.</u> ¶¶ 43, 47.)  However, the Winnemem
are not a federally recognized Indian tribe.  (<u>Id.</u> ¶ 51.)
Plaintiffs allege that the U.S. government made an error in 1978
that resulted in the Winnemem's exclusion from the list of Indian
tribes eligible to receive federal benefits.  (<u>Id.</u>)  Plaintiffs
allege that the Federal Court of Claims had previously recognized
the Winnemem's federal status in 1928, 1954, and 1968.  (<u>Id.</u> ¶
42, 45).  Plaintiffs also point to federal permits allegedly
issued to Caleen Sisk-Franco and the Winnemem to possess eagle

feathers and parts as further evidence of previous federal tribal recognition. (Id. ¶¶ 47-48.)

In their amended complaint, plaintiffs seek declaratory and injunctive relief for alleged harm resulting from defendants' failure to acknowledge the Winnemem as a federally recognized Indian tribe and for alleged harm to various areas that the Winnemem use as cultural and religious sites. (Amend. Compl. ¶¶ 154-68.)

## A.   Nosoni Creek

Plaintiffs allege that the USFS engaged in various actions causing damage to the Nosoni Creek area, a site of cultural importance to the Winnemem, without regard to plaintiffs' protests and in violation of a previous project agreement between the Winnemem and the USFS. (Id. ¶¶ 53-55.) Specifically, plaintiffs allege that in 2001, the USFS cut down three ancient "grandfather" grapevines that the Winnemem had used for medicinal purposes for more than 100 years. (Id. ¶ 53.) Plaintiffs further allege that the USFS dumped dirt on a "sacred site" without archeological monitoring or guidance and rendered inaccessible an area for ceremonial storytelling by bulldozing and filling in a vegetated area. (Id. ¶¶ 54-55.) In addition, plaintiffs allege that the USFS allowed unmonitored construction and industrial activities that "create biological hazards and disturb natural ecosystems" at the site. (Id. ¶ 77.) Finally, plaintiffs allege that the USFS blocked access to the site for religious and ceremonial activities. (Id.)

Plaintiffs assert that these actions violate several federal statutes: the Archaeological Resource Protection Act ("ARPA"), 16

U.S.C. §§ 470ee; the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f; the American Indian Religious Freedom Act ("AIRFA"), 42 U.S.C. § 1996; and the Religious Freedom and Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1(b) (Id. ¶¶ 79, 131.)

**B.   Dekkas Site**

In the Dekkas area, plaintiffs allege that in 2005 the USFS ignored an agreement with the Winnemem and cut substantial quantities of old-growth manzanita trees that for centuries had been the only source of wood used for religious and cultural celebrations.  (Id. ¶ 61.)  Plaintiffs allege that the cutting took place in violation of an agreement that an archaeologist and tribal representatives be present.  (Id. ¶ 62.)

Plaintiffs further allege that in 2006, the USFS facilitated entry by campers, hikers, and others into the Dekkas site by removing a lock from a gate. (Id. ¶ 60.)  Plaintiffs allege that also in 2006, the USFS ordered the Winnemem to remove all their items from the Dekkas site, including rocks of historical and cultural significance to the Winnemem.  (Id. ¶ 63.)

Finally, plaintiffs allege that in 2007, the USFS and/or defendant Cottini forbade plaintiffs from using "Cultural Property" at Dekkas, including "an ancient fire pit with rocks that have been used by the Winnemem for hundreds of years," by improperly revoking a special use permit and refusing to issue new permits without cause (Id. ¶ 59.)  Plaintiffs claim that defendants' actions in connection with the Dekkas area interfered with plaintiffs' use and enjoyment of a site that has religious significance for the Winnemem.  (Id. ¶¶ 59-63.)

1   Plaintiffs assert that defendants' actions in connection
2   with the Dekkas area violate the ARPA, NHPA, AIRFA, RFRA, and the
3   National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321.
4   (Id. ¶¶ 83, 131.)

5   **C.   Coonrod Cultural Site**

6   Plaintiffs allege that the USFS allowed campers, hikers, and
7   hunters to intrude into the Coonrod Cultural Site, an area of
8   ceremonial importance to the Winnemem. (Id. ¶ 64.) Plaintiffs
9   further allege that the USFS failed to prevent cattle from
10  trampling over a fire pit of religious significance to the
11  Winnemem, despite a 2005 request by the Winnemem that the USFS
12  replace or rebuild a fence around the site. (Id.) In addition,
13  plaintiffs allege that defendants permitted recreational vehicles
14  to drive into the site. (Id. ¶ 89.) Plaintiffs also allege that
15  defendants refused to take steps to preserve cultural artifacts
16  and that defendants arbitrarily denied requests to expand the
17  boundaries of the Coonrod site to encompass newly discovered
18  cultural resources. (Id.)

19  Plaintiffs assert that these alleged actions and omissions
20  violate the ARPA, NHPA, AIRFA, and RFRA. (Id. ¶¶ 89, 131.)

21  **D.   Gilman Road**

22  Plaintiffs allege that the USFS violated an agreement
23  regarding Gilman Road by causing medicinal plants to be cut and
24  sprayed with herbicides. (Id. ¶ 65.) Plaintiffs further allege
25  that the USFS failed to disclose to the Winnemem projects that
26  damaged cultural and religious sites or to take all possible
27  steps to mitigate the damage. (Id. ¶ 95.)
28  /////

6

1   Plaintiffs assert that these alleged actions and omissions
2   violate the ARPA, NHPA, and NEPA. (Id.)
3   **E.   Buck Saddle Prayer Site**
4   Plaintiffs allege that the USFS built a recreational bike
5   trail through the Buck Saddle Prayer Site without disclosing the
6   project in advance or taking sufficient measures to protect the
7   site. (Id. ¶ 101.) Defendants further allege that the USFS
8   breached a Memorandum of Understanding by reorienting rocks, (Id.
9   ¶ 66), and that the USFS converted a prayer rock sacred to the
10  Winnemem into a ramp for dirt bikes. (Id. ¶ 101.) In addition,
11  plaintiffs assert that defendants have "enabl[ed] ongoing
12  degradation" of ecosystems, natural resources, and archaeological
13  sites, and permitted general access to the area without taking
14  sufficient measures to protect artifacts. (Id. ¶ 101.)
15  Plaintiffs assert that these alleged actions and omissions
16  violate the ARPA, NHPA, NEPA, AIRFA, and RFRA. (Id. ¶¶ 101,
17  131.)
18  **F.   Panther Meadow**
19  Plaintiffs allege that the USFS allowed damage to Panther
20  Meadow to occur by permitting visitors to scatter human cremation
21  remains and to otherwise damage a site of religious and cultural
22  importance to the Winnemem and by failing to close Panther Meadow
23  or to regulate public access as necessary to prevent damage to
24  the site's resources. (Id. ¶ 67, 107.)
25  Plaintiffs assert that the these alleged actions and
26  omissions violate the ARPA, NHPA, and NEPA. (Id. ¶ 107.)
27  /////
28  /////

**G.    Shasta Reservoir Indian Cemetery**

Plaintiffs allege that defendants permitted damage to occur to the Shasta Reservoir Indian Cemetery and interfered with plaintiffs' use of the cemetery, including the right to use the cemetery for burials.  (Id. ¶ 113.)  Plaintiffs further allege that the DOI, BLM, and BOR have not responded to Freedom of Information Act requests for the title and deed and trust documents for the cemetery.  (Id. ¶ 69.)

Plaintiffs assert that these alleged actions and omissions violate the ARPA, NHPA, and NEPA.  (Id. ¶ 113.)

**H.    Rocky Ridge Village Site**

Plaintiffs allege that defendants have permitted campers to park recreational vehicles at the Rocky Ridge Village Site in ceremonial areas that the Winnemem use for religious worship. (Id. ¶ 119.)  Plaintiffs further allege that the USFS intends to permit the construction of a parking lot on a village and burial site, despite objections by the Winnemem, (Id. ¶ 71.), and that defendants have failed to engage in pre-project consultation in connection with the planned parking lot. (Id. ¶¶ 119-20.)

Plaintiffs assert that these alleged actions and omissions violate the NHPA, NEPA, and the Native American Grave Protection and Repatriation Act ("NAGPRA"), 25 U.S.C. §§ 3002, 3013 (Id. ¶¶ 119, 121.)

**I.    Shasta Dam**

Finally, plaintiffs allege that defendants are evaluating proposals to raise the level of Shasta Dam, and assert that this project would cause the innundation and destruction of numerous burial, cultural, and religious sites of the Winnemem.  (Id. ¶¶

8

72, 125.)  Plaintiffs allege that defendants have failed to consult with the Winnemem or "to consider, assess and mitigate potential project impacts."  (<u>Id.</u> ¶¶ 125-26.)

Plaintiffs assert that these alleged actions and omissions violate the NHPA, NEPA, and NAGPRA.  (<u>Id.</u> ¶ 125.)

**STANDARDS**

**A.   Lack Of Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction." <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377 (1994).  Lack of subject matter jurisdiction may be asserted by either party or by a court, *sua sponte*, at any time during the course of an action.  Fed. R. Civ. P. 12(h)(2)-(3).  Once challenged, the burden of establishing a federal court's jurisdiction rests on the party asserting the jurisdiction.  <u>See</u> <u>Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.</u>, 907 F.2d 911, 912 (9th Cir. 1990).

There are two forms of 12(b)(1) attacks on subject matter jurisdiction: facial and factual attacks.  <u>See</u> <u>Thornhill Publ'g Co. v. General Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979).  In a facial attack, a court construes jurisdictional allegations liberally and considers uncontroverted factual allegations to be true.  <u>See</u> <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 507 (2d Cir. 1994); <u>Oaxaca v. Roscoe</u>, 641 F.2d 386, 391 (5th Cir. 1981).  However, in an action such as this, where the defendant refers to matters outside the complaint to challenge the plaintiff's assertion of subject matter jurisdiction, the 12(b)(1) motion is a factual attack.  <u>See</u> <u>Safe Air v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a factual

9

1  attack, a district court may review affidavits or evidence

2  relating to the jurisdictional issue and need not presume the

3  truthfulness of the plaintiff's allegations.  Id.  The burden

4  then falls upon the party opposing the motion to present

5  affidavits or other evidence to establish subject matter

6  jurisdiction.  Id.

7  **B.   Failure To State A Claim**

8       Under Federal Rule of Civil Procedure 8(a), a pleading must

9  contain "a short and plain statement of the claim showing that

10 the pleader is entitled to relief."  See Ashcroft v. Iqbal, 129

11 S. Ct. 1937, 1949 (2009).  Under notice pleading in federal

12 court, the complaint must "give the defendant fair notice of what

13 the claim is and the grounds upon which it rests."  Bell Atlantic

14 v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations

15 omitted).  "This simplified notice pleading standard relies on

16 liberal discovery rules and summary judgment motions to define

17 disputed facts and issues and to dispose of unmeritorious

18 claims."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

19      On a motion to dismiss, the factual allegations of the

20 complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319,

21 322 (1972).  The court is bound to give the plaintiff the benefit

22 of every reasonable inference to be drawn from the "well-pleaded"

23 allegations of the complaint.  Retail Clerks Int'l Ass'n v.

24 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not

25 allege "'specific facts' beyond those necessary to state his

26 claim and the grounds showing entitlement to relief."  Twombly,

27 550 U.S. at 570.  "A claim has facial plausibility when the

28 plaintiff pleads factual content that allows the court to draw

1  the reasonable inference that the defendant is liable for the
2  misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949.

3      Nevertheless, the court "need not assume the truth of legal
4  conclusions cast in the form of factual allegations." <u>United</u>
5  <u>States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th
6  Cir. 1986).  While Rule 8(a) does not require detailed factual
7  allegations, "it demands more than an unadorned, the defendant-
8  unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S. Ct. at 1949.  A
9  pleading is insufficient if it offers mere "labels and
10  conclusions" or "a formulaic recitation of the elements of a
11  cause of action." <u>Twombly</u>, 550 U.S. at 555; <u>Iqbal</u>, 129 S. Ct. at
12  1950 ("Threadbare recitals of the elements of a cause of action,
13  supported by mere conclusory statements, do not suffice.").
14  Moreover, it is inappropriate to assume that the plaintiff "can
15  prove facts which it has not alleged or that the defendants have
16  violated the . . . laws in ways that have not been alleged."
17  <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council</u>
18  <u>of Carpenters</u>, 459 U.S. 519, 526 (1983).

19      In ruling upon a motion to dismiss, the court may consider
20  only the complaint, any exhibits thereto, and matters which may
21  be judicially noticed pursuant to Federal Rule of Evidence 201.
22  <u>See</u> <u>Mir v. Little Co. of Mary Hospital</u>, 844 F.2d 646, 649 (9th
23  Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of United</u>
24  <u>States, Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).  Rule
25  201 permits a court to take judicial notice of an adjudicative
26  fact "not subject to reasonable dispute" because the fact is
27  either "(1) generally known within the territorial jurisdiction
28  of the trial court or (2) capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The court can take judicial notice of matters of public record, such as pleadings in another action and records and reports of administrative bodies.  See Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. at 1952.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." Id. at 1949.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

### C.  Leave to Amend

Pursuant to Rule 15(a), "leave [to amend] is to be freely given when justice so requires."  "[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." Martinez v. Newport Beach, 125 F.3d 777, 785 (9th Cir. 1997).

/////

/////

12

1

**ANALYSIS**

2      The agency defendants move to dismiss plaintiffs' first

3 through twelfth claims on the grounds that: (1) the court does

4 not have subject matter jurisdiction to hear plaintiffs'

5 complaint; (2) plaintiffs lack Article III standing; and (3)

6 plaintiffs fail to state a claim upon which relief can be

7 granted.  (Defs.' Mem. Supp. Mot. Dismiss Amend. Compl. ("Agency

8 Defs.' Mem."), filed Dec. 11, 2009, at 1-2.)  Defendants Cottini

9 and Heywood move to dismiss plaintiffs' thirteenth claim for

10 failure to state a claim upon which relief can be granted.

11 (Cottini and Heywood's Mem. Supp. Mot. Dismiss Amend. Compl.

12 ("Individual Defs.' Mem."), filed Mar. 26, 2010, at 1-2.)

13 **A.   Non-justiciable Political Question**

14      Plaintiffs' eleventh and twelfth claims allege that

15 defendants violate the Due Process Clause of the Fifth Amendment

16 by refusing to acknowledge the Winnemem as a previously federally

17 recognized Indian tribe.  (Amend. Compl. ¶¶ 135-46.)  Plaintiffs

18 assert that the Winnemem were once a federally recognized tribe

19 but no longer receive such acknowledgment as a result of a

20 bureaucratic error.  (<u>Id.</u> ¶¶ 42, 49-51.)  Plaintiffs argue that

21 once "the government has treated the Winnemem as federally

22 recognized for some purposes, . . . that status must exist for

23 all purposes."  (<u>Id.</u> ¶ 47.)  Plaintiffs claim that defendants'

24 refusal to acknowledge the Winnemem as a previously-recognized

25 tribe deprives plaintiffs of substantive rights, protections, and

26 assistance that flow from federal recognition status, in

27 violation of the Due Process Clause of the Fifth Amendment.  (<u>Id.</u>

28 ¶ 137.)  In addition, plaintiffs allege that other, similarly-

13

1  situated Indian tribes received federal acknowledgment outside

2  the regular administrative recognition process, and that

3  defendants' refusal to provide such treatment for the Winnemem

4  denies plaintiffs equal protection of the laws, in violation of

5  the Due Process Clause of the Fifth Amendment. (Id. ¶ 141-44.)

6  In their prayer for relief, plaintiffs, inter alia, seek a

7  declaration that the Winnemem have been federally recognized as a

8  tribe and that Congress never terminated that status. (Id. ¶

9  161.)

10      Defendants argue that federal recognition of Indian tribe

11  status is a non-justiciable political question and thus, that the

12  court is precluded from adjudicating the issue of whether or not

13  the Winnemem are entitled to federal acknowledgment.[2] (Agency

14  Defs.' Mem. at 5-6.)

15      "Questions, in their nature political, or which are, by the

16  constitution and laws, submitted to the executive, can never be

17  made in this court." Marbury v. Madison, 5 U.S. (1 Cranch) 137,

18  170 (1803).  The Supreme Court has articulated criteria for

19  determining when a case involves a non-justiciable political

20  question. Baker v. Carr, 369 U.S. 186 (1962).  Specifically, the

21  Court has explained that "[p]rominent on the surface of any case

22  held to involve a political question" may be found "a textually

23  demonstrable constitutional commitment of the issue to a

24  coordinate political department." Id. at 217.

25  _____

26      [2]   Defendants also argue that plaintiffs should be
    judicially estopped from asserting that the Winnemem were
    previously a federally recognized tribe. (Agency Defs.' Mem. at
27  4-5.)  Because the court finds federal acknowledgment to be a
    non-justiciable political question, the court need not reach
28  defendants' judicial estoppel argument.

1        Article I of the U.S. Constitution provides that Congress
2   shall have the power "[t]o regulate Commerce . . . with the
3   Indian Tribes."  U.S. Const., Art. I, § 8, cl. 3.  The Supreme
4   Court has explained that "in respect of distinctly Indian
5   communities the questions whether, to what extent, and for what
6   time they shall be recognized and dealt with as dependent tribes
7   requiring the guardianship and protection of the United States
8   are to be determined by Congress, and not by the courts."  United
9   States v. Sandoval, 231 U.S. 28, 46 (1913); see also United
10  States v. Holliday, 70 U.S. 407, 419 (1865) (stating that in
11  regard to the recognition of Indian tribes, "it is the rule of
12  this court to follow the action of the executive and other
13  political departments of the government, whose more special duty
14  it is to determine such affairs").  Consequently, "'the action of
15  the federal government in recognizing or failing to recognize a
16  tribe has traditionally been held to be a political one not
17  subject to judicial review.'"  Miami Nation of Indians of Ind. v.
18  U.S. Dep't of Interior, 255 F.3d 342, 347 (7th Cir. 2001)(quoting
19  William C. Canby, Jr., American Indian Law in a Nutshell 5 (3d
20  ed. 1998)).

21       In this case, the gravamen of plaintiffs' due process and
22  equal protection claims is that defendants' failure to grant them
23  federal acknowledgment as a previously recognized tribe violates
24  the Constitution.  However, the determination of whether the
25  Winnemem are entitled to such acknowledgment is a non-justiciable
26  political question and thus beyond the purview of the court.
27  While plaintiffs disingenuously contend that they do not seek
28  federal recognition through this litigation, (See Compl. ¶ 161),

1  their constitutional claims necessarily require the court to
2  inject itself in processes expressly left to the province of
3  Congress.   Accordingly, defendants' motion to dismiss plaintiffs'
4  eleventh and twelfth claims is GRANTED without leave to amend.[3]

5  **B.    Subject Matter Jurisdiction**

6      **1.    Article III Standing**

7      Defendants assert that because the Winnemem are not a
8  federally-recognized Indian tribe, plaintiffs lack Article III
9  standing to assert claims for alleged injuries to tribal
10 interests.   (Agency Defs.' Mem. at 1.)   Thus, defendants argue
11 that the federal government can have no duty under the NHPA to
12 consult with the Winnemem in their tribal capacity.   (_Id._ at 10.)

13     Whether the plaintiff has standing to sue is a threshold
14 jurisdictional question.   _Steel Co. v. Citizens for a Better_
15 _Env't_, 523 U.S. 83, 102 (1998).   The "irreducible constitutional
16 minimum of standing" contains three requirements.   _Id._ at 102-03
17 (quoting _Lujan v. Defenders of Wildlife_, 504 U.S. 555, 560
18 (1992)).   First, the plaintiff must allege an injury-in-fact that
19 is concrete and particularized, and actual or imminent.   _Id._ at
20 103.   A particularized injury is one that "affect[s] the
21 plaintiff in a personal and individual way.   _Lujan_, 504 U.S. at
22 561 n.1.   Second, there must be a "fairly traceable connection
23 between the plaintiff's injury and the complained-of conduct of
24 the defendant."   _Steel Co._, 523 U.S. at 103.   And, third, "there
25 must be redressability – a likelihood that the requested relief

26 _____

27     [3]    Further, as set forth _infra_, to the extent plaintiffs
   seek to press claims on behalf of a federally recognized Indian
   tribe, plaintiffs lack standing, and such claims are DISMISSED
28 without leave to amend.

will redress the alleged injury." Id.  The party invoking

federal jurisdiction bears the burden of establishing standing.

Lujan, 504 U.S. at 561.  However, at the pleading stage, "general

factual allegations of injury resulting from the defendant's

conduct may suffice" to establish constitutional standing.

Bennett v. Spear, 520 U.S. 154, 168 (1997) (quoting Lujan, 504

U.S. at 561).

To the extent that claims may be brought for injuries to

tribal interests pursuant to the APA and the statutes under which

plaintiffs sue, plaintiffs lack Article III standing to assert

those claims because plaintiffs are not a federally recognized

tribe, and as set forth above, the court lacks authority to

adjudicate the issue of whether plaintiffs are entitled to

acknowledgment of previous federal recognition.[4]  However, as the

court held in its prior Order, tribal status is not plaintiffs'

only available basis for Article III standing.  The Ninth Circuit

has held that having cultural and religious ties to an area

suffering an environmental impact can be a sufficient basis to

establish injury-in-fact for standing purposes.  See Pit River

Tribe v. U.S. Forest Serv., 469 F.3d 768, 779 (9th Cir. 2006)

---

[4]     Defendants also argue that regardless of whether or not
the Winnemem are federally recognized, plaintiffs cannot maintain
Article III standing because any tribal interests in the lands
encompassed by the Central Valley Project were extinguished by a
1941 Act of Congress, Pub. L. No. 77-198, 55 Stat. 612. (Agency
Defs.' Mem. at 2.)  But because the Winnemem lack federal
recognition, and thus lack standing to bring claims based on
alleged injury to tribal interests, the argument that any tribal
interests in the Central Valley Project were extinguished by the
1941 Act is irrelevant.  Moreover, as defendants acknowledge, the
Act does not preclude plaintiffs from stating claims as
individual Indians or as members of the public.  (Id. at 8,
n.10.)  Plaintiffs' complaint, liberally construed, may be read
to state such claims.

1  (holding that plaintiffs adequately pled injury-in-fact to allege

2  NEPA violations where the plaintiffs had used the affected area

3  for cultural and religious ceremonies for countless generations).

4  The Supreme Court has also held that environmental impacts that

5  diminish a plaintiff's aesthetic and recreational interests may

6  be sufficient to constitute an injury-in-fact.  See Friends of

7  the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S.

8  167, 183 (2000) (stating that "environmental plaintiffs

9  adequately allege injury in fact when they aver that they use the

10 affected area and are persons 'for whom the aesthetic and

11 recreational values of the area will be lessened' by the

12 challenged activity" (quoting Sierra Club v. Morton, 405 U.S.

13 727, 735 (1972))); see also Ocean Advocates v. United States Army

14 Corps of Eng'rs, 402 F.3d 846, 859 (9th Cir. 2005) (stating that

15 injury-in-fact is established by "showing a connection to the

16 area of concern sufficient to make credible the contention that

17 the person's future life will be less enjoyable").

18     Here, plaintiffs' first through tenth claims allege that

19 various actions and omissions by defendants have caused damage to

20 sites to which plaintiffs have long-standing cultural and

21 religious ties and have interfered with plaintiffs' use and

22 enjoyment of those sites.  Thus, under Pit River Tribe, Laidlaw,

23 and Ocean Advocates, plaintiffs have sufficiently alleged injury-

24 in-fact to establish Article III standing over their NEPA claims.

25     Furthermore, plaintiffs' first through ninth claims allege

26 violations of the NHPA.  These claims are likewise not dependent

27 upon acknowledgment of tribal status because, as the court held

28 in its previous Order, under Section 106 of the NHPA, any member

18

of the public has an interest in whether a federal agency takes
into account the effect of an undertaking on any site that
implicates historic preservation concerns.  See 16 U.S.C. § 470f;
36 C.F.R. §§ 800.1; 800.2(d)(1)-(2).  The Code of Federal
Regulations interpret Section 106 to require federal agencies to
"seek and consider the views of the public" and to "provide the
public with information about an undertaking and its effects on
historic properties and seek public comment and input."  See 36
C.F.R. § 800.2(d)(1)-(2).

Plaintiffs allege that they have an interest under the NHPA
in preserving the historical quality of the areas named in the
first amended complaint.  Plaintiffs also allege that the USFS
violated prior agreements by not seeking plaintiffs' comments and
by ignoring plaintiffs' input before undertaking the activities
that allegedly damaged the cultural value of the affected areas.
These general factual allegations, if sufficient to state a
claim, are sufficient to show injury-in-fact.  See Bennett, 520
U.S. at 168 ("on a motion to dismiss, we presume that general
allegations embrace those specific facts that are necessary to
support the claim" (quoting Lujan, 504 U.S. at 561)); see also
Mont. Wilderness Ass'n v. Fry, 310 F. Supp. 2d 1127, 1151 (D.
Mont. 2004) (holding that the plaintiff had sufficiently alleged
injury-in-fact based on impact to sites that the plaintiff had
visited in the past and planned to revisit each year in the
future).

**2.   Sovereign Immunity**

Defendants further assert that the court has no subject
matter jurisdiction because there is no waiver of sovereign

immunity for claims brought under the ARPA, NHPA, NEPA, AIRFA, and NAGPRA. (Agency Defs.' Mem. at 11-12.) However, plaintiffs bring their first through tenth claims pursuant to the APA, 5 U.S.C. §§ 704, 706 (Amend. Compl. ¶¶ 75-133.) The APA allows plaintiffs to seek judicial review of federal agency actions and to obtain non-monetary relief for legal wrongs resulting from a final action undertaken by an agency or by an agency officer or employee. 5 U.S.C. §§ 702, 704, 706. While the APA does not create an independent basis for subject matter jurisdiction, it provides a waiver of sovereign immunity in suits seeking judicial review of a federal agency action. See Gallo Cattle Co. v. U.S. Dep't of Agric., 159 F.3d 1194, 1198 (9th Cir. 1998). Where plaintiffs seek judicial review under the APA of agency actions that allegedly violate other federal statutes, a federal court has subject jurisdiction pursuant to 28 U.S.C. § 1331 unless the statute in question "expressly precludes review." Id. Therefore, the court may exercise jurisdiction to the extent that plaintiffs can sufficiently plead claims under the APA.

### 3. APA Prudential Standing

Finally, defendants assert that plaintiffs fail to allege any discrete actions defendants were required to take. (Agency Defs.' Mem. at 13.) Thus, defendants argue, plaintiffs cannot satisfy the APA's prudential standing requirements. (Id.)

Under the APA, courts shall "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and shall hold unlawful and set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To bring suit

20

under the APA, plaintiffs must meet statutory requirements for

prudential standing.  <u>See</u> <u>Churchill County v. Babbitt</u>, 150 F.3d

1072, 1078 (9th Cir. 1998).  Specifically, plaintiffs must show

that (1) there has been final agency action which adversely

affected them, and (2) that as a result, their injury falls

within the "zone of interests" of the statutes they claim were

violated.  5 U.S.C. § 702; <u>Churchill County</u>, 150 F.3d at 1078.

 "[T]wo conditions must be satisfied for agency action to be

final:  First, the action must mark the consummation of the

agency's decisionmaking process–it must not be of a merely

tentative or interlocutory nature.  And second, the action must

be one by which rights or obligations have been determined, or

from which legal consequences will flow." <u>Fairbanks North Star</u>

<u>Borough v. U.S. Army Corps of Eng'rs</u>, 543 F.3d 586, 591 (9th Cir.

2008), <u>cert. denied</u>, 129 S.Ct. 2825 (June 22, 2009) (quoting

<u>Bennett</u>, 520 U.S. at 177-78).  Claims may also be brought under 5

U.S.C. § 706(1) based upon an agency's failure to act when the

agency fails to take a discrete action required by law.  <u>See</u>

<u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 64 (2004).

 Plaintiffs' first through tenth claims are based upon

defendants' alleged failure to act in compliance with the

mandates of various federal statutes.  To the extent that

plaintiffs plead sufficient facts to allege failure to undertake

discrete actions required under these statutes, plaintiffs may

establish prudential standing under the APA and the court may

exercise subject matter jurisdiction over the claims.  Because

jurisdiction thus depends upon the specific requirements of the

various statutes at issue, in conjunction with the facts pled,

the court analyzes plaintiffs' APA allegations on a claim-by-claim basis.

**C.   Plaintiffs' First Claim for Relief: Nosoni Creek[5]**

Plaintiffs' first claim for relief is brought pursuant to 5 U.S.C. §§ 704 and 706 for alleged violations of the ARPA and NHPA at the Nosoni Creek area. (Amend. Compl. ¶¶ 75-80.)  Plaintiffs allege that the USFS destroyed medicinal "grandfather" grapevines, dumped dirt on a "sacred site," bulldozed and filled a vegetated area in violation of a "project agreement,"[6] allowed unmonitored construction and industrial activity to occur resulting in biological hazards and disruptions to ecosystems, and blocked plaintiffs' access to the site. (Id. ¶¶ 53-55, 77.)

**1.   ARPA**

The Archaeological Resources Protection Act was enacted in part "to secure, for the present and future benefit of the

---

[5]   The court notes at the outset that plaintiffs' claims are replete with vague, conclusory allegations relating to the alleged injuries and statutory violations occurring at numerous enumerated sites.  Plaintiffs' allegations are comprised primarily of conduct or consequences they are aggrieved by, but, as set forth, *infra*, generally fail to set forth how the numerous statutes referenced have been violated or how defendants are responsible for the conduct or consequences at issue.  Due to the expansive nature of the allegations and the litany of statutes alleged to have been violated, defendants have not been put on fair notice of the majority of the claims against them and the grounds upon which they rest.  However, for the same reasons, the court cannot conclude that amendment would be futile as to many of these claims.  Plaintiffs are cautioned that where leave to amend has been granted, further amendment to the complaint should clearly set forth the factual basis for each claim of an alleged statutory violation.

[6]   Defendants contend that no project agreement between the Winnemem and the USFS in connection with the Nosoni Creek site exists.  (Agency Defs.' Mem. at 9.)  However, the absence of an agreement is not be dispositive, as agreements are not required for the alleged ARPA and NHPA violations at issue.

22

American people, the protection of archaeological resources and sites which are on public lands and Indian lands." 16 U.S.C. 470aa(b).  The ARPA provides that "[n]o person may excavate, remove, damage, or otherwise alter or deface" any archaeological resource located on public or Indian lands unless pursuant to a permit.  16 U.S.C. § 470ee(a).  Under the federal regulations pertaining to ARPA, "person" is defined to include "any officer, employee, agent, department, or instrumentality of the United States."  43 C.F.R. § 7.3(g).[7]  The regulations define "archaeological resource" as "any material remains of human life or activities which are at least 100 years of age, and which are of archaeological interest."  43 C.F.R. § 7.3(a).  A list of illustrative examples of material remains includes "horticultural/agricultural gardens or fields."  43 C.F.R. § 7.3(a)(3)(I).

In this case, plaintiffs have alleged that in 2001 the USFS destroyed three ancient "grandfather" grapevines that the Winnemem "had used medicinally for over 100 years."  (Amend. Compl. ¶ 53.) Construing plaintiffs' complaint liberally, plaintiffs may be understood to allege that the "grandfather" grapevines constitute an archaeological resource within the meaning of the ARPA and that the USFS lacked a permit authorizing its action.  Thus, liberally construed, plaintiffs' amended

_____

[7]     Defendants argue that plaintiffs cannot state any claim for ARPA violations because "they have no right to seek enforcement of ARPA, only the government does."  (Agency Defs.' Reply Br. at 7.)  However, defendants cite no authority in support of this interpretation of the statute.  Furthermore, the applicable regulations define the "any person" to whom ARPA's prohibitions apply to include federal officers and agencies.  43 C.F.R. § 7.3(g).

complaint alleges that the USFS destroyed three grandfather vines at Nosoni Creek, that these items are archaeological resources protected by the ARPA, and that defendants acted in violation of the ARPA by destroying the vines without a permit.[8]  Because plaintiffs allege that defendants failed to take a discrete action required by statute, plaintiffs have alleged "agency action unlawfully withheld," and thus plaintiffs have sufficient stated a claim under the APA, 5 U.S.C. § 706(1), for a violation of the ARPA, 16 U.S.C. § 470ee(a).

However, defendants argue that plaintiffs' claim is time-barred by the six-year statute of limitations applicable to claims brought under the APA.  (Agency Defs.' Mem. at 15.)  <u>See</u> 28 U.S.C. 2401(a); <u>Gros Ventre Tribe v. United States</u>, 469 F.3d 801, 814 n.12 (9th Cir. 2006).  Plaintiffs allege that the destruction of the vines occurred in 2001, (Amend. Compl. ¶ 53.), but plaintiffs did not file their complaint until 2009.  Thus, as

_____

[8]    Defendants argue that plaintiffs fail to state an ARPA claim because "plaintiffs have not alleged any acts which involve the intentional excavation and removal of cultural items." (Agency Defs.' Mem. at 18.)  Some district courts have held that intentional conduct is required to constitute a violation of 16 U.S.C. § 470ee(a).  <u>See</u>, <u>e.g.</u>, <u>Attakai v. United States</u>, 746 F. Supp. 1395, 1410 (D. Ariz. 1990) (stating that "the Act is clearly intended to apply specifically to purposeful excavation and removal of archaeological resources, not excavations which may, or in fact inadvertently do, uncover such resources"); <u>San Carlos Apache Tribe v. United States</u>, 272 F. Supp. 2d. 860, 888 (D. Ariz. 2003)(same, citing <u>Attakai</u>).  However, because notice pleading applies, and plaintiffs sufficiently allege that the USFS destroyed items encompassed under ARPA, the court need not reach the issue of whether intentional conduct is required at this stage in the litigation.

1  pled, plaintiffs' ARPA claim for the destruction of the vines is

2  barred by the statute of limitations.[9]

3      To the extent that plaintiffs allege other ARPA violations

4  at the Nosoni site, plaintiffs' assertions are vague and

5  conclusory and do not state a plausible claim for relief.

6  Specifically, plaintiffs do not clearly make allegations against

7  any agency other than the USFS.  (Agency Defs.' Mot. at 19.)

8  Plaintiffs maintain that "[t]he [d]efendants in this case . . .

9  should not be dismissed as to any claim."  (Opp. Agency Defs.'

10  Mot. at 17.)  But from the vague allegations in plaintiffs'

11  amended complaint, it is not apparent whether any agencies other

12  than the USFS are alleged to have violated the ARPA in connection

13  with Nosoni Creek, nor have plaintiffs sufficiently pled facts to

14  state claims for any other ARPA violations at Nosoni Creek.

15  Therefore, regarding the alleged ARPA violations in plaintiffs'

16  first claim for relief, defendants' Motion to Dismiss is GRANTED

17  with leave to amend.

18      **2.   NHPA**

19      In enacting the National Historic Preservation Act, Congress

20  found that "historic properties significant to the Nation's

21  heritage are being lost or substantially altered, often

22  inadvertently, with increasing frequency." 16 U.S.C. § 470(b)(3).

23  To mitigate this problem and to promote "the preservation of this

24  irreplaceable heritage," 16 U.S.C. § 470(b)(4), Section 106 of

25  the NHPA requires federal agencies to consider the effect of any

26  _____

27      [9]   Furthermore, plaintiffs fail to allege any facts or to
    advance any arguments with respect to the applicability of
28  equitable tolling or any other basis by which the six-year
    statute of limitations would not apply.

undertaking on any site that is eligible for inclusion in the

National Register before expending federal funds or approving any

licenses in connection with the undertaking.  16 U.S.C. § 470f.

The NHPA's regulations require federal agencies to consult

and consider the views of interested members of the public in the

Section 470f process.  36 C.F.R. §§ 800.1(a), 800.2(a)(4),

800.2(d)(1), 800.2(d)(2), 800.3(e).  "The goal of consultation is

to identify historic properties potentially affected by the

undertaking, assess its effects and seek ways to avoid, minimize

or mitigate any adverse effects on historic properties."  36

C.F.R. § 800.1.  The NHPA contains additional provisions

requiring federal agencies to consult with Indian tribes that

attach religious or cultural significance to affected properties.

16 U.S.C. § 470a(d)(6)(B); 36 C.F.R. § 800.2(c)(2).

Defendants present a Rule 12(b)(1) factual challenge to

plaintiffs' assertion of subject-matter jurisdiction.[10]  Pursuant

to this challenge, defendants have attached various exhibits to

their Motion to Dismiss, including Exhibit H, Declaration of

Kristy Cottini.  In her declaration, Cottini addresses

plaintiffs' allegations regarding the actions of the USFS at the

Nosoni Creek site.  (Agency Defs.' Mem. Ex. H ¶ 4.)  Cottini

states that the only project undertaken by the USFS near Nosoni

Creek was the Nosoni Bridge Replacement project and that a NEPA

---

[10]    Defendants also argue that plaintiffs lack standing to
establish NHPA claims based upon failure to consult the Winnemem
because "NHPA regulations regarding consultation on historic
properties of religious and cultural significance to Indian
tribes only require consultation with federally-recognized Indian
tribes."  (Agency Defs.' Mem. at 13.)  However, plaintiffs may be
entitled to participate in the public consultation process
required under Section 106.

1  environmental analysis and NHPA Section 106 evaluation were

2  conducted in conjunction with the project in 2000. (<u>Id.</u>)

3  According to Cottini, "[t]he Section 106 evaluation concluded

4  that the bridge was not eligible for the National Historic

5  Register, and there were no other historic properties in the

6  project area." (<u>Id.</u>)

7       Where a party introduces evidence challenging a federal

8  court's subject matter jurisdiction, the burden falls upon the

9  opposing party to present evidence to establish jurisdiction.

10 <u>See</u> <u>Safe Air v. Meyer</u>, 373 F.3d at 1039. Here, defendants have

11 introduced evidence to show compliance with the NHPA's

12 requirements. Plaintiffs fail to allege with any clarity any

13 deficiency in the Section 106 process completed in 2000.

14 Furthermore, it is also unclear if plaintiffs allege that any

15 defendants violated NHPA through activities at Nosoni Creek

16 outside of the scope of the previously completed Section 106

17 process. Thus, even as interested members of the public,

18 plaintiffs have not clearly stated allegations giving rise to any

19 plausible injury-in-fact under the NHPA. Therefore, as to the

20 alleged NHPA violations in connection with Nosoni Creek,

21 defendants' Motion to Dismiss is GRANTED with leave to amend.

22 **D.   Plaintiffs' Second Claim: the Dekkas Site**

23      Plaintiffs' second claim for relief is brought pursuant to 5

24 U.S.C. §§ 704 and 706 for alleged violations of the ARPA, NHPA,

25 and NEPA at the Dekkas area. Plaintiffs allege that defendants

26 improperly revoked a special use permit and refused to issue new

27 permits without cause; cut old-growth manzanita trees in

28 violation of an agreement with the Winnemem; cut a lock from a

gate and facilitated entry of campers and hikers into the site;
and ordered plaintiffs to remove from the site various items
including rocks of historical and cultural significance to the
Winnemem.  (Amend. Compl. ¶¶ 59-63.)

### 1.   NEPA

The National Environmental Policy Act ("NEPA"), 42 U.S.C. §
4321, establishes a national policy of environmental stewardship
in order to promote various purposes, including to "fulfill the
responsibilities of each generation as trustee of the environment
for succeeding generations," 42 U.S.C. § 4331(b)(1), and to
"preserve important historic, cultural, and natural aspects of
our national heritage."  42 U.S.C. § 4331(b)(4).  The NEPA
requires federal agencies to prepare a detailed Environmental
Impact Statement ("EIS") for all "major Federal actions
significantly affecting the quality of the human environment."
42 U.S.C. § 4332(c).  In order to determine whether or not a
proposed action requires the preparation of an EIS, an agency may
prepare an Environmental Assessment ("EA").  See Te-Moak Tribe of
W. Shoshone of Nev. v. U.S. Dep't of the Interior, 2010 WL
2431001, at *4 (9th Cir. 2010); 40 C.F.R. §§ 1501.4(b),
1501.4(c).  An EA is "a concise public document" that serves to
"[b]riefly provide sufficient evidence and analysis for
determining whether to prepare an environmental impact statement
or a finding of no significant impact."  40 C.F.R. § 1508.9.  An
agency may also comply with NEPA's requirements by determining
that a proposed action falls within an established categorical
exclusion, a category of actions that have been previously
determined under agency regulations not to have a significant

effect on the human environment.   40 C.F.R. §§ 1501.4(a), 1508.4.
Moreover, to bring a claim under the APA for a violation of the
NEPA, plaintiffs must show that they have exhausted available
administrative remedies prior to bringing an action in federal
court.   See Idaho Sporting Congress, Inc. v. Rittenhouse, 305
F.3d 957, 965 (9th Cir. 2002).

Here, defendants argue that plaintiffs fail "to allege any
facts that establish how NEPA has been violated" or to identify
"any final agency action or decision that could be the subject of
a NEPA challenge." (Agency Defs.' Mem. at 18.)

Plaintiffs' allegations as to defendants' alleged NEPA
violations at the Dekkas site are insufficient to state a
plausible claim for relief.   Plaintiffs do not specify any final
agency action or failure to take a discrete action required by
statute as the basis of an alleged NEPA violation.   Even assuming
that cutting old-growth manzanita trees might qualify as a major
federal action, plaintiffs fail to specify how the USFS allegedly
violated NEPA with this action.   Plaintiffs do not allege that
the USFS failed to prepare an EIS or EA and do not allege that
the cutting was not encompassed within a categorical exclusion.
Further, plaintiffs do not plead any facts establishing that they
have exhausted any available administrative remedies.   Plaintiffs
thus fail to plead sufficient facts to give rise to a plausible
claim for relief.   Therefore, as to the NEPA violations alleged
in plaintiffs' second claim for relief, defendants' Motion to
Dismiss is GRANTED with leave to amend.

/////

/////

1

**2.    ARPA**

2      The ARPA violations alleged in plaintiffs' second claim for

3  relief are vague and conclusory.  Plaintiffs do not specifically

4  identify any archaeological resources or the manner in which the

5  ARPA was allegedly violated.  While plaintiffs do make reference

6  to "an ancient fire pit with rocks that have been used by the

7  Winnemem for hundreds of years," (Amend. Compl. ¶ 59), it is not

8  clear whether plaintiffs are asserting that any damage occurred

9  to the fire pit, or simply objecting to defendants' alleged

10  failure to issue a permit in connection with the property.

11  Although plaintiffs also assert that the USFS destroyed "sacred

12  trees" at the site, (Id. ¶ 83), plaintiffs do not allege that the

13  USFS acted without a permit or that the trees constitute

14  archaeological resources.  Furthermore, it is not clear that the

15  trees meet the definition of an archaeological resource under the

16  applicable regulations.  See 43 C.F.R. § 7.3(a).

17      Because plaintiffs fail to plead sufficient facts to state a

18  plausible claim for any ARPA violation at the Dekkas site,

19  defendants' Motion to Dismiss is GRANTED with leave to amend as

20  to the ARPA violations alleged in plaintiffs' second claim for

21  relief.

22

**3.    NHPA**

23      Plaintiffs' allegations of NHPA violations at the Dekkas

24  area are likewise insufficient.  Plaintiffs allege that the USFS

25  cut down old-growth Manzanita trees without notice to the

26  Winnemem.  (Amend. Compl. ¶¶ 61-62.)  However, plaintiffs do not

27  allege that any portion of the Dekkas Site is eligible for

28  inclusion in the National Register or that the USFS failed to

engage in required public consultation prior to acting.[11]  To the
extent that plaintiffs might assert NHPA violations for failure
to consult the public, plaintiffs thus fail to state a plausible
claim for relief.  Therefore, as to the alleged NHPA violations
in plaintiffs' second claim for relief, defendants' Motion to
Dismiss is GRANTED with leave to amend.

### 4.  Failure to Issue Permits

In response to plaintiffs' allegations regarding use permits
for the Dekkas area, defendants again point to the Cottini
Declaration.  (Agency Defs.' Mem. at 10.)  According to Cottini,
the USFS previously issued a nontransferrable individual use
permit for the Dekkas Rock area to Florence Jones, a Winnemem
Wintu, in 1979. (Agency Defs.' Mem. Ex. H ¶ 6.)  Cottini states
that the permit expired in 1989 and that another nontransferrable
permit was issued to Jones in 1995.  (Id.)  According to Cottini,
the second permit terminated by operation of law upon Jones's
death in 2003.  (Id.)  Cottini further states that the Winnemem
Wintu, Mark Franco, and Caleen Sisk Franco have never applied to
the USFS for a special use permit for the Dekkas Rock Area.
(Id.)

Unless plaintiffs can establish that a permit was required
for the Dekkas Rock area, that they applied for a permit, and
that the USFS denied their application, plaintiffs cannot show
final agency action denying them a permit, and thus cannot show

---

[11]    While the NHPA does require federal agencies to consult
with Indian tribes that attach religious or cultural significance
to affected properties, see 16 U.S.C. § 470a(d)(6)(B), 36 C.F.R.
§ 800.2(c)(2), as set forth supra, plaintiffs lack standing to
bring claims for alleged violations of these requirements because
the Winnemem are not a federally recognized Indian tribe.

injury-in-fact.[12]   Because defendants have introduced evidence
challenging the assertion of subject matter jurisdiction, the
burden shifts to plaintiffs to show that they meet the final
agency action requirement for prudential standing under the APA,
5 U.S.C. § 704, as well as injury-in-fact to establish Article
III standing.   Plaintiffs have failed to meet this burden, and
therefore, as to the permit allegations in plaintiffs' second
claim for relief, defendants' Motion to Dismiss is GRANTED with
leave to amend.

**E.   Plaintiffs' Third Claim: the Coonrod Cultural Site**

Plaintiffs' third claim for relief is brought pursuant to 5
U.S.C. §§ 704 and 706 for alleged violations of the ARPA and NHPA
at the Coonrod Cultural Site.   Plaintiffs allege that the USFS
allowed campers, hikers, and hunters to gain access to the
Coonrod site; that the USFS failed to prevent cattle from
trampling and destroying a "sacred fire pit"; and that the USFS
refused to take adequate measures to preserve cultural artifacts
at the site. (Amend. Compl. ¶¶ 64, 89.)

**1.   ARPA**

Plaintiffs' allegations of ARPA violations at the Coonrod
site are vague and conclusory.   Plaintiffs do not allege any
action taken without a required permit.   In addition, plaintiffs
fail to identify any archaeological resources encompassed by
ARPA, nor do they plead facts with sufficient clarity to give
rise to a plausible inference that defendants destroyed any

---

[12]   Importantly, Cottini states that the Dekkas Rock area
is on lands open to the public, and that *plaintiffs do not need a
permit to use the site*. (Agency Defs.' Mem. Ex. H ¶ 6.)

archaeological resources.  Furthermore, despite plaintiffs'
assertion that the agency defendants other than the USFS should
not be dismissed as to any claim, plaintiffs do not allege any
activities by any defendants other than the USFS in connection
with the Coonrod site.  Thus, plaintiffs fail to allege
sufficient facts to give rise to a plausible ARPA claim against
any defendant.  Therefore, regarding the alleged ARPA violations
in plaintiffs' third claim for relief, defendants' Motion to
Dismiss is GRANTED with leave to amend.

**2.   NHPA**

Plaintiffs likewise fail to plausibly allege any NHPA
violations in their third claim for relief.  Plaintiffs do not
sufficiently allege any final agency action in violation of the
NHPA or failure to perform a discrete action required by the
NHPA.  Plaintiffs appear to object to the USFS's alleged failure
to exclude campers, hikers, hunters, and cattle from the Coonrod
site and the USFS's alleged failure to take measures to protect
artifacts.  However, plaintiffs do not specify any USFS
undertaking among these alleged omissions that would trigger the
Section 106 process, nor do the facts alleged, even liberally
construed, give rise by inference to any discernible NHPA
violation.  Plaintiffs also fail to identify any action by any
other agency that could constitute an NHPA violation at the
Coonrod site.  Consequently, as to the alleged NHPA violations in
plaintiffs' third claim for relief, defendants' Motion to Dismiss
is GRANTED with leave to amend.

/////

/////

**F.   Plaintiffs' Fourth Claim: Gilman Road**

Plaintiffs' fourth claim for relief is brought pursuant to 5 U.S.C. §§ 704 and 706 for alleged violations of the ARPA, NHPA, and NEPA in connection with Gilman Road.  Plaintiffs allege that the USFS violated the ARPA and NHPA by cutting and spraying with herbicides certain "culturally important medicinal plants" in violation of an agreement with the Winnemem.  (Amend. Compl. ¶¶ 65, 95.)  Plaintiffs allege that the USFS violated the NEPA by "failing to disclose projects that damaged Cultural and Religious Sites and by failing to take all possible steps to mitigate the damage."  (Amend. Compl. ¶ 95.)

**1.   ARPA**

Plaintiffs fail to allege any facts that could constitute a plausible claim for a violation of the ARPA.  Plaintiffs do not identify any archaeological resources nor do they plead any facts giving rise to a plausible inference that the USFS removed or damaged any archaeological resources, with or without a permit. Plaintiffs also fail to make any allegations pertaining to any other defendant.  Therefore, as to the alleged ARPA violations in plaintiffs' fourth claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

**2.   NHPA and NEPA**

Defendants have introduced evidence to show compliance with the NHPA and NEPA in connection with Gilman Road.  In Exhibit H to defendants' Memorandum in support of their Motion to Dismiss, the Declaration of Kristy Cottini, defendant Cottini states that the USFS completed an NHPA Section 106 evaluation and a NEPA environmental assessment for the Gilman Road Shaded Fuelbreak

Project.[13]   (Agency Defs.' Mem. Ex. H ¶ 5.)   Cottini further states that Caleen Sisk Franco and Mark Franco participated in the NEPA process, which was completed in June 2003. (Id.)

Plaintiffs do not identify any deficiency in the USFS's previous Section 106 evaluation, nor do plaintiffs allege with any clarity any NHPA violation at Gilman Road outside the scope of the previous evaluation.   Similarly, as to their NEPA allegations, plaintiffs fail to identify any deficiency in the EA that the USFS prepared in June 2003, or to allege any USFS action outside the scope of the previous EA and in violation of the NEPA.   Further, plaintiffs fail to plead any facts establishing exhaustion of NEPA administrative remedies or to plead any facts giving rise to any plausible NHPA or NEPA claim against any other defendant.   Therefore, as to the alleged NHPA and NEPA violations in plaintiffs' fourth claim for relief, defendants' Motion to Dismiss is GRANTED with leave to amend.

**G.   Plaintiffs' Fifth Claim: Buck Saddle Prayer Site**

Plaintiffs' fifth claim for relief is brought pursuant to 5 U.S.C. §§ 704 and 706 for alleged violations of the ARPA, NHPA, and NEPA in connection with the Buck Saddle Prayer Site. Plaintiffs allege that the USFS created a recreational bike trail through "one of the Winnemem's sacred prayer sites" without disclosing the activity; converted a "sacred prayer rock" into a ramp for dirt bikes; allowed common access to the site without protecting "sacred artifacts"; and "enable[d] ongoing degradation" of "ecosystems," "natural resources," and "known

_____

[13]   The court may take judicial notice of agency reports pursuant to Fed. R. Evid. 201(b).

archaeological sites." (Amend. Compl. ¶¶ 66, 101.) Plaintiffs
further allege that "[t]he USFS, Ms. Cottini and Ms. Heywood also
failed to include the Winnemem in the planning of these acts of
deliberate desecration." (Id. ¶ 66.)

**1.   ARPA**

Plaintiffs' allegations regarding "known archaeological
sites" in the Buck Saddle area are vague and conclusory.
Plaintiffs do not identify specific archaeological resources
protected by the ARPA, nor do they identify any action by the
USFS, such as the removal or destruction of archaeological
resources without a permit, that could constitute an ARPA
violation. Consequently, plaintiffs have not pled sufficient
facts to state a plausible claim for an ARPA violation by the
USFS. Plaintiffs do not make any allegations regarding the other
agency defendants, and the alleged failure of defendants Cottini
and Heywood to consult the Winnemem does not give rise to any
plausible claim for an ARPA violation. Therefore, as to the
alleged ARPA violations in plaintiffs' fifth claim for relief,
defendants' Motion to Dismiss is GRANTED with leave to amend.

**2.   NHPA**

Construing the amended complaint liberally, plaintiffs
allege that the Buck Saddle Prayer Site is eligible for inclusion
in the National Register and that activities by the USFS at the
site constitute an "undertaking" requiring evaluation under 16
U.S.C. § 470f. While plaintiffs have framed their claim for
relief based on the USFS's alleged failure to consult the

Winnemem as a tribe,[14] a liberal construction of the amended complaint permits the inference that plaintiffs allege the USFS failed to consult and consider the views of interested members of the public, and that such consultation was required under 36 C.F.R. §§ 800.1(a), 800.2(a)(4), 800.2(d)(1), 800.2(d)(2), 800.3(e).  Therefore, regarding the alleged NHPA violations at the Buck Saddle site, to the extent that plaintiffs allege the USFS failed to comply with the requirements of 16 U.S.C. § 470f in conjunction with the construction of the bike trail and dirt bike ramp, defendants' Motion to Dismiss plaintiffs' fifth claim for relief is DENIED.

### 3.   NEPA

However, plaintiffs' allegations of NEPA violations at the Buck Saddle site are insufficient to state a plausible claim for relief.  Even if plaintiffs' complaint is construed liberally to allege that the construction of the bike trail and bike ramp constituted "major Federal actions significantly affecting the quality of the human environment" within the meaning of 42 U.S.C. § 4332(c), plaintiffs fail to allege any facts that would give rise to the inference that the USFS violated the NEPA in connection with these actions.  Plaintiffs do not allege that the USFS failed to prepare an EIS or EA and do not allege that the construction was not encompassed within a categorical exclusion from NEPA requirements.  Nor do plaintiffs plead any facts to establish exhaustion of administrative remedies.  Therefore, as

---

[14]   As set forth *supra*, plaintiffs do not have standing to bring such allegations because the Winnemem lack federal recognition.

1   to the alleged NEPA violations in plaintiffs' fifth claim for
2   relief, defendants' Motion to Dismiss is GRANTED with leave to
3   amend.
4   **H.   Plaintiffs' Sixth Claim: Panther Meadow**
5        Plaintiffs' sixth claim for relief is brought pursuant to
6   the APA, 5 U.S.C. §§ 704 and 706, for alleged violations of the
7   ARPA, NHPA, and NEPA in connection with Panther Meadow.
8   Plaintiffs allege that the USFS permitted visitors to scatter
9   human cremation remains and to inflict unspecified damage on the
10  site, failed to close Panther Meadow, and failed to regulate
11  public access sufficiently to prevent damage to the site.
12  (Amend. Compl. ¶¶ 67, 107.)
13       Plaintiffs' allegations are vague and conclusory.
14  Plaintiffs fail to allege the presence of any archaeological
15  resources protected by the ARPA or any removal or destruction of
16  such resources that could constitute an ARPA violation.
17  Plaintiffs also fail to allege any USFS undertaking at the site
18  that could require a Section 106 process under the NHPA, nor do
19  they allege the failure to engage in such a process.  Finally,
20  plaintiffs fail to identify any major federal action that might
21  require an EIS or EA pursuant to the NEPA, or to plead facts
22  demonstrating exhaustion of administrative remedies.
23  Consequently, defendants' Motion to Dismiss plaintiffs' sixth
24  claim for relief is GRANTED with leave to amend.
25  **I.   Plaintiffs' Seventh Claim: Shasta Reservoir Indian Cemetery**
26       Plaintiffs' seventh claim for relief is brought pursuant to
27  the APA, 5 U.S.C. §§ 704 and 706, for alleged violations of the
28  ARPA, NHPA, and NEPA in connection with the Shasta Reservoir

1  Indian Cemetery.  Plaintiffs allege that the BLM denied the

2  Winnemem access to the cemetery for burials.  (Amend. Compl. ¶

3  68.)  Plaintiffs also allege that defendants allowed unspecified

4  damage to the cemetery and "fail[ed] to fulfill their trust

5  responsibilities for the Cemetery."  (<u>Id.</u> ¶ 113).

6      Plaintiffs' allegations are vague and conclusory and do not

7  plausibly give rise to any violations of the statutes at issue.

8  Plaintiffs do not identify any archaeological resources or any

9  actions by any defendant that could conceivably constitute a

10  violation of the ARPA.  Plaintiffs do not identify any agency

11  undertaking that might require a Section 106 process under the

12  NHPA or the failure to engage in such a process.  Finally,

13  plaintiffs do not identify any major agency action or failure to

14  perform an EIS or EA pursuant to the NEPA and do not demonstrate

15  exhaustion of administrative remedies.  Therefore, defendants'

16  Motion to Dismiss plaintiffs' seventh claim for relief is GRANTED

17  with leave to amend.

18  **J.   Plaintiffs' Eighth Claim: the Rocky Ridge Village Site**

19      Plaintiffs' eighth claim for relief is brought pursuant to

20  the APA, 5 U.S.C. §§ 704 and 706, for alleged violations of the

21  NHPA, NEPA, and NAGPRA in connection with the construction of a

22  parking lot and the parking of recreational vehicles at the Rocky

23  Ridge Village site.

24      **1.   Construction of a Parking Lot**

25      Plaintiffs allege that the USFS intends to permit the

26  construction of a parking lot on a village and burial site, and

27  that the USFS has failed to engage in pre-project consultation

28

with the Winnemem in connection with the planned construction. (Id. ¶ 71.)

Defendants assert that plaintiffs lack standing to bring their claims in connection with the Rocky Ridge Village site because according to defendants, there is no USFS project to construct a parking lot, and thus, plaintiffs cannot show injury-in-fact to establish Article III standing or final agency action sufficient for APA prudential standing. (Agency Defs.' Mem. at 11.) Defendants point to Exhibit H of their Memorandum, a declaration in which defendant Cottini asserts that "[t]here is no past or current Forest Service project to construct a parking lot at the Rocky Ridge Village site.[15] (¶ 7.)

Based on the Cottini declaration, the USFS has not undertaken any project to construct a parking lot, and thus, there is no final agency action and no injury-in-fact to plaintiffs. Thus, plaintiffs lack standing to bring claims regarding future construction.

### 2.   Permitting Recreational Vehicles to Park

Plaintiffs also allege that the USFS permits campers to park recreational vehicles in a make-shift parking area located on ceremonial sites that the Winnemem use for religious worship. (Amend. Compl. ¶ 71, 119.)

### a.   NAGPRA

The Native American Grave Protection and Repatriation Act imposes restrictions on the intentional excavation and removal of

---

[15]     The court may review evidence outside the complaint when considering a Rule 12(b)(1) factual attack on plaintiffs' assertion of subject matter jurisdiction.   See Safe Air v. Meyer, 373 F.3d at 1039.

1  Native American human remains and objects.  25 U.S.C. § 3002(c).

2  Under the NAGPRA, the "intentional removal from or excavation of

3  Native American cultural items from Federal or tribal lands" may

4  only be conducted pursuant to a permit under the ARPA, 16 U.S.C.

5  § 470cc, and after consultation with or consent by the

6  appropriate Indian tribe.  25 U.S.C. § 3002(c).  In the event of

7  the inadvertent discovery of Native American remains or objects

8  on federal lands, NAGPRA requires notification of the head of the

9  agency with primary management authority over the site.  25

10 U.S.C. § 3002(d)(1).  If an inadvertent discovery occurs in

11 connection with an activity, the person finding the items must

12 "cease the activity in the area of the discovery, make a

13 reasonable effort to protect the items discovered before resuming

14 such activity, and provide notice" of the discovery.  Id.

15    Defendants argue that plaintiffs fail to state a claim for

16 any NAGPRA violations because plaintiffs do not allege any

17 intentional excavation and removal of cultural items by the USFS.

18 (Agency Defs.' Mem. at 19.)  Defendants also point out that

19 plaintiffs do not make allegations concerning any defendant other

20 than the USFS in connection with the Rocky Ridge site.  (Id.)

21    Plaintiffs' allegations of NAGPRA violations are vague and

22 conclusory.  Plaintiffs fail to allege that any defendant

23 excavated or removed, either intentionally or inadvertently, any

24 specific Indian remains or objects at the Rocky Ridge site.

25 Thus, plaintiffs fail to state a plausible claim for a violation

26 of NAGPRA by any defendant.  Therefore, as to plaintiffs'

27 allegations of NAGPRA violations at the Rocky Ridge site,

28 defendants' Motion to Dismiss is GRANTED with leave to amend.

41

1

      **b.   NHPA and NEPA**

2     Plaintiffs' allegations are likewise insufficient to state a

3 claim for any NHPA or NEPA violations based on the USFS allowing

4 vehicles to park at the Rocky Ridge Village site.   Even liberally

5 construing the amended complaint to allege that the site is

6 eligible for inclusion in the National Register, plaintiffs do

7 not identify any undertaking by the USFS that could trigger the

8 Section 106 process under the NHPA, nor do they allege failure to

9 engage in this process.   Similarly, plaintiffs fail to allege any

10 major federal action in the absence of an EIS or EA under the

11 NEPA, and do not demonstrate exhaustion of administrative

12 remedies.   Thus, as to the alleged NHPA and NEPA violations at

13 Rocky Ridge Village, defendants' Motion to Dismiss plaintiffs'

14 eighth claim for relief is GRANTED with leave to amend.

15 **K.   Plaintiffs' Ninth Claim: Shasta Dam**

16     Plaintiffs' ninth claim for relief is brought pursuant to

17 the APA, 5 U.S.C. §§ 704 and 706, for alleged violations of the

18 NHPA, NEPA, and NAGPRA in connection with Shasta Dam.   Plaintiffs

19 allege that defendants are evaluating proposals to raise Shasta

20 Dam and that this proposed action would cause the innundation and

21 destruction of burial, ceremonial, and religious sites important

22 to the Winnemem.   (Amend. Compl. ¶ 125.)   Plaintiffs further

23 allege that defendants have refused to assess or to mitigate the

24 impact of this alleged project or to engage in consultation with

25 the Winnemem regarding the project.   (Id. ¶ 126.)

26     Defendants argue that plaintiffs lack standing to bring

27 claims regarding raising Shasta Dam because no final decision has

28 been made to raise the dam.   (Agency Defs.' Mem. at 11.)

Pursuant to their challenge to plaintiffs' assertion of subject matter jurisdiction, defendants present evidence that the Shasta Dam project is currently the subject of a feasibility study that will not be completed until at least 2011. (Agency Defs.' Ex. I, ¶ 4.) According to a declaration by Deputy Regional Director for the Bureau of Reclamation Pablo Arroyave, "Reclamation is not congressionally authorized to move beyond the feasibility study phase and actually increase Shasta Reservoir storage by raising Shasta Dam." (Id.)

Plaintiffs' amended complaint alleges only that defendants are "evaluating" proposals to raise Shasta Dam. (Amend. Compl. ¶ 125.) Plaintiffs do not allege final agency action, or failure to take a discrete action required by statute, by any defendant, in connection with Shasta Dam. Thus, plaintiffs fail to plead the requirements of APA prudential standing. Plaintiffs also fail to show injury-in-fact, and thus have not established Article III standing. Consequently, defendants' Motion to Dismiss plaintiffs' ninth claim for relief is GRANTED without leave to amend.

**L.   Plaintiffs' Tenth Claim: AIRFA and RFRA**

Plaintiffs' tenth claim for relief is brought pursuant to the APA, 5 U.S.C. §§ 704 and 706, for alleged violations of the AIRFA and RFRA in connection with alleged activities at various sites, including Nosoni Creek, the Dekkas site, the Coonrod site, the Buck Saddle Prayer Site, and "numerous other" unspecified sites on the McCloud River. (Amend. Compl. ¶ 131.) Plaintiffs allege that defendants violated the AIRFA and RFRA by interfering

43

with plaintiffs' access to and use of these sites for religious
activities.  (Id.)

### 1.   AIRFA

The American Indian Religious Freedom Act provides that "it
shall be the policy of the United States to protect and preserve
for American Indians their inherent right of freedom to believe,
express, and exercise the traditional religions of the American
Indian, Eskimo, Aleut, and Native Hawaiians, including but not
limited to access to sites, use and possession of sacred objects,
and the freedom to worship through ceremonials and traditional
rites."  42 U.S.C. § 1996.  The Supreme Court has held that AIRFA
does not "create a cause of action or any judicially enforceable
individual rights."  Lyng v. Nw. Indian Cemetery Protective
Ass'n, 485 U.S. 439, 455 (1988); see also Henderson v. Terhune,
379 F.3d 709, 715 (9th Cir. 2004) (stating that "AIRFA is simply
a policy statement that is judicially unenforceable").

Defendants argue that because AIRFA does not create
judicially enforceable rights, plaintiffs' AIRFA claim fails to
state a claim for which relief can be granted.  (Agency Defs.'
Mem. at 20.)

Because AIRFA is simply a policy statement, AIRFA does not
mandate any discrete agency action that defendants must
undertake, nor can plaintiffs establish a final agency action by
any defendant in violation of AIRFA.  Consequently, plaintiffs
fail to state a claim pursuant to the APA for any violation of
AIRFA.  Therefore, regarding the alleged AIRFA violations in
plaintiffs' tenth claim for relief, defendants' Motion to Dismiss
is GRANTED without leave to amend.

2. **RFRA**

The Religious Freedom and Restoration Act provides that "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" except where the government demonstrates that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000bb-1(a), 2000bb-1(b). The Ninth Circuit has held that a "substantial burden" under the RFRA "is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1070 (9th Cir. 2008)(internal references omitted).

Defendants argue that plaintiffs fail to state a claim for any RFRA violations because plaintiffs do not allege any instance of being forced to choose between following their religious tenets and receiving a governmental benefit or of being coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions. (Agency Defs.' Mem. at 20.)

Plaintiffs answer this objection by merely repeating their vague and conclusory assertions that defendants violated the RFRA by failing to preserve and grant plaintiffs access to various sites. (Opp. Agency Defs.' Mot. Dismiss at 18.) Because plaintiffs do not plead any facts to establish a "substantial burden" to their exercise of religion, plaintiffs thus fail to state a claim for any violation of RFRA. Therefore, regarding

the alleged RFRA violations in plaintiffs' tenth claim for
relief, defendants' Motion to Dismiss is GRANTED with leave to
amend.

**M.   Bivens Claim**

Plaintiffs bring their thirteenth claim for relief under
Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388 (1971), against defendants Cottini and
Heywood in their individual capacities.  Plaintiffs argue that
Cottini and Heywood went beyond their official duties as USFS
employees and violated plaintiffs' constitutional rights.
(Amend. Compl. ¶ 150-52.)  Specifically, plaintiffs allege that
Cottini and Heywood violated plaintiffs' First and Fifth
Amendment rights by (1) engaging in "[d]isparate treatment of
Plaintiffs' tribal interests and preferential treatment of
recreational activities along the McCloud River"; (2) failing to
consult with the Winnemem concerning a plan to replace the
McCloud River Bridge; (3) damaging Winnemem cultural sites in
connection with a campground expansion at Hirz Bay; (4) failing
to consult with the Winnemem concerning the Hirz Bay campground
expansion; (5) revoking a special use permit for the Dekkas site;
(6) damaging and allowing others to damage the Buck Saddle site;
(7) failing to take sufficient measures, in consultation with the
Winnemem, to protect the Buck Saddle site; and (8) advising other
federal agencies that the USFS could not meet with plaintiffs
regarding replanting activity at sites not addressed in this
action.  (Amend. Compl. ¶¶ 57-58, 150-151.)  Plaintiffs further
allege that defendant Heywood violated the First and Fifth
Amendments by refusing to discipline or to provide "cultural

46

sensitivity training" to defendant Cottini and by cancelling "MOU meetings" with plaintiffs concerning Panther Meadows.  (Id. ¶¶ 150-151.)

"In Bivens, the Supreme Court 'recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" W. Radio Servs. Co. v. U.S. Forest Serv., 578 F.3d 1116, 1119 (9th Cir. 2009)(quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1947 (2009)).  The Bivens Court held that a plaintiff was entitled to bring a federal court action against individual federal agents for damages resulting from the violation of his Fourth Amendment rights.  403 U.S. at 397.  The Supreme Court has extended Bivens liability to other contexts.  In Davis v. Passman, the Court recognized an implied cause of action for damages for a violation of the Due Process Clause of the Fifth Amendment, 442 U.S. 228, 248-49 (1979), and in Carlson v. Green, the Court held that a Bivens remedy was available for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. 446 U.S. 14, 20-21 (1980).  However, "[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend Bivens liability 'to any new context or new category of defendants.'" Iqbal, 129 S. Ct. at 1948 (quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001)); see also W. Radio Servs. Co., 578 F.3d at 1119 (citing decisions "across a variety of factual and legal contexts" in which the Supreme Court refused to extend Bivens liability).

To determine whether a Bivens remedy is consistent with Congressional intent, the Supreme Court has developed a two-step

1  analysis.  W. Radio Servs. Co., 578 F.3d at 1120.  First, a court

2  must determine whether there is "'any alternative existing

3  process for protecting' the plaintiff's interest."  Id. (quoting

4  Wilkie v. Robbins, 551 U.S. 537, 550 (2007)).  The existence of a

5  remedial process "raise[s] the inference that Congress 'expected

6  the Judiciary to stay its Bivens hand' and 'refrain from

7  providing a new freestanding remedy in damages.'"  Id. (quoting

8  Wilkie, 551 U.S. at 550, 554).  If the court "cannot infer that

9  Congress intended a statutory remedial scheme to take the place

10 of a judge-made remedy," the court must move on to the second

11 step and evaluate whether there are "'factors counseling

12 hesitation' before devising such an implied right of action."  Id.

13 (quoting Wilkie, 551 U.S. at 550).

14      Defendants Cottini and Heywood move to dismiss plaintiffs'

15 Bivens claim on multiple grounds, asserting, inter alia, (1) that

16 the availability of a remedy under the APA precludes plaintiffs

17 from bringing a Bivens claim, and (2) that the claim is barred by

18 the court's prior Order dismissing the FTCA claims in plaintiffs'

19 initial complaint.  (Individual Defs.' Mot. Dismiss First Amend.

20 Compl. at 1-2.)

21      **1.   Availability of the APA**

22      The Ninth Circuit has held that where a remedy is available

23 under the APA, a plaintiff is precluded from bringing a Bivens

24 claim.  W. Radio Servs. Co., 578 F.3d at 1122-23.  In Western

25 Radio, the plaintiff brought claims against the USFS and some of

26 its officers under both the APA and Bivens, alleging violations

27 of the First and Fifth Amendments and the APA.  578 F.3d at 1118.

28 Noting that "[t]he APA expressly declares itself to be a

comprehensive remedial scheme" and that the "APA's procedures are
available where no other adequate alternative remedy exists," the
court concluded that "the APA leaves no room for <u>Bivens</u> claims
based on agency action or inaction." <u>Id.</u> at 1122-23.

The instant case is controlled by <u>Western Radio</u>.  Here,
plaintiffs have brought a <u>Bivens</u> claim against defendants Cottini
and Heywood based on essentially the same allegations upon which
they bring their APA claims against the agency defendants.  Thus,
plaintiffs' other claims for relief demonstrate the potential
availability of an alternative remedy.

Plaintiffs argue that the APA does not preclude their <u>Bivens</u>
claim because the alleged actions by Cottini and Heywood at issue
were "extra procedural" acts outside of the individual
defendants' official duties, and thus not within the scope of
administrative agency action subject to APA review.  (Opp.
Cottini and Heywood's Mot. Dismiss at 6.)  However, this
assertion is belied by plaintiffs' amended complaint, in which
the same allegations are pled both under the APA and under
<u>Bivens</u>.  Plaintiffs fail to allege facts demonstrating any
instance where Cottini or Heywood acted outside of an official
capacity, but simply fall back on the conclusory assertion that
Cottini and Heywood "were acting outside the scope of their
authority and employment functions as federal employees."
(Amend. Compl. ¶ 152.)  Under <u>Western Radio</u>, plaintiffs' <u>Bivens</u>
claim thus fails as a matter of law because the availability of
the APA provides plaintiffs with an adequate remedial scheme.
/////
/////

49

1

**2.    The FTCA Judgment Bar**

Although plaintiffs may amend their complaint to plead allegations for which relief under the APA is unavailable, defendants maintain that plaintiffs' <u>Bivens</u> claim is precluded by the judgment bar of the Federal Tort Claims Act, 28 U.S.C. § 2676.  (Individual Defs.' Mem. at 4-6.)

The FTCA contains a limited waiver of sovereign immunity authorizing civil tort suits for money damages against the United States government.  <u>See</u> <u>Vacek v. U.S. Postal Serv.</u>, 447 F.3d 1248, 1250 (9th Cir. 2006).  The FTCA grants federal courts jurisdiction to hear claims for damages for injury or loss of property caused by the negligent or wrongful act or omission of any federal employee acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant.  28 U.S.C. § 1346(b)(1).  Under the FTCA, a judgment in an action brought pursuant to 28 U.S.C. § 1346(b) "shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim."  28 U.S.C. § 2676.

In their initial complaint, plaintiffs brought FTCA claims for money damages pursuant to 28 U.S.C. § 1346(b)(1).  (Compl. ¶ 2).  In its prior Order, the court dismissed plaintiffs' FTCA claims without leave to amend for lack of subject matter jurisdiction based upon plaintiffs' failure to exhaust administrative remedies and to meet the statute of limitations. (Order at 23-24.)

1  Defendants maintain that plaintiffs' <u>Bivens</u> claim is "by
2  reason of the same subject matter" as their FTCA claims, and thus
3  barred under 28 U.S.C. § 2676.  (Individual Defs.' Mem. at 4.)
4  Plaintiffs do not dispute that their <u>Bivens</u> claim arises out of
5  the same subject matter as their dismissed FTCA claims, but argue
6  (1) that the FTCA's judgment bar does not apply to alternative
7  claims raised in the same action and (2) that dismissals on
8  jurisdictional grounds are not judgments under § 2676.  (Opp.
9  Individual Defs.' Mot. Dismiss at 4-5).

10       **a.   Claims Raised in the Same Action**

11  Plaintiffs argue that § 2676 only applies to subsequent
12  actions based on allegations made in a previously dismissed
13  action and not to alternative claims raised in the same action.
14  (Opp. Individual Defs.' Mot. Dismiss at 4-5.)  However, the Ninth
15  Circuit has applied § 2676 to hold that a judgment on an FTCA
16  claim bars recovery on a <u>Bivens</u> claim in the same action.
17  <u>Arevalo v. Woods</u>, 811 F.2d 487, 490 (9th Cir. 1987).  In <u>Arevalo</u>,
18  a district court entered judgment in favor of the plaintiff on
19  two claims arising out of the same event: an FTCA claim against
20  the United States and a <u>Bivens</u> claim against an Immigration and
21  Naturalization Service investigator.  811 F.2d at 488.  The Ninth
22  Circuit held that the FTCA judgment barred recovery under <u>Bivens</u>
23  and reversed the <u>Bivens</u> judgment against the investigator.  <u>Id.</u>
24  Applying <u>Arevalo</u> to the facts of this case, the FTCA's judgment
25  bar precludes plaintiffs' <u>Bivens</u> claim even though both claims
26  were raised in the same action.
27  /////
28  /////

### b.   Dismissals on Jurisdictional Grounds

Plaintiffs also maintain that the FTCA's judgment bar does not apply where "FTCA claims are not dismissed on the merits, but rather on jurisdictional grounds," relying on Pesnell v. Arsenault, 543 F.3d 1038 (9th Cir. 2008) (Opp. Individual Defs.' Mot. Dismiss at 5).

However, the Ninth Circuit has interpreted the FTCA's judgment bar to preclude Bivens claims where a dismissal of a previous FTCA claim was upheld based on lack of subject matter jurisdiction. Gasho v. United States, 39 F.3d 1420, 1436-38 (9th Cir. 1994). The Gasho court applied § 2676 in affirming the dismissal of Bivens claims against Customs Service agents after a related FTCA claim against the government had been dismissed. Id. Although the district court had dismissed the Gasho plaintiffs' FTCA abuse of process claim under Rule 12(b)(6), the Ninth Circuit upheld the dismissal on the alternative grounds that the claim was barred under an exception to the FTCA's waiver of sovereign immunity. Id. at 1436. Although lack of subject matter jurisdiction was the basis on which the FTCA judgment was upheld, the Ninth Circuit nevertheless found related Bivens claims to be precluded. Id. at 1437. The court held that "any FTCA judgment, regardless of its outcome, bars a subsequent Bivens action on the same conduct that was at issue in the prior judgment." Id. (emphasis in original).

Where Bivens claims are not based on the same allegations that formed the basis of a dismissed FTCA claim, by contrast, such Bivens claims are not barred. In Pesnell, the plaintiff had previously brought an action against the United States and

52

various federal agencies pursuant to the FTCA.   543 F.3d at 1040-41.   The FTCA claims were dismissed for lack of subject matter jurisdiction.   <u>Id.</u> at 1041.   In a subsequent action, the plaintiff then brought related <u>Bivens</u> claims and federal and state civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against four federal employees.   <u>Id.</u>   The <u>Pesnell</u> court held that § 2676 barred the plaintiff from proceeding on the same factual allegations made in the dismissed FTCA claims.   <u>Id.</u> at 1041-42.   However, to the extent that the <u>Bivens</u> and RICO claims arose out of allegations not raised in the previous action, the plaintiff could proceed because <u>Bivens</u> and RICO claims are not encompassed within the subject matter jurisdiction authorized by § 1346(b), and thus the claims were "not foreclosed by the statutory bar of § 2676," which applies only to claims brought under § 1346(b).   <u>Id.</u> at 1041.

Under § 2676 as interpreted in <u>Pesnell</u>, a <u>Bivens</u> action related to a previously dismissed FTCA claim may proceed only to the extent that it arises out of factual allegations different than those raised in the FTCA claim.   Consequently, in order to proceed with their <u>Bivens</u> claim, plaintiffs must not only allege action by defendants Cottini and Heywood for which relief is unavailable pursuant to the APA, they must also plead only factual allegations not previously raised by their FTCA claims.

Because the allegations in plaintiffs' <u>Bivens</u> claim are the same allegations raised in their previously dismissed FTCA claims, as well as in their current APA claims, defendants' Motion to Dismiss plaintiffs' thirteenth claim for relief is GRANTED with leave to amend.

**CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss are GRANTED in part and DENIED in part.

(1)   Defendants' motion to dismiss plaintiffs' first claim for relief is GRANTED with leave to amend.

(2)   Defendants' motion to dismiss plaintiffs' second claim for relief is GRANTED with leave to amend.

(3)   Defendants' motion to dismiss plaintiffs' third claim for relief is GRANTED with leave to amend.

(4)   Defendants' motion to dismiss plaintiffs' fourth claim for relief is GRANTED with leave to amend.

(5)   Defendants' motion to dismiss plaintiffs' fifth claim for relief is DENIED as to the allegation that the USFS violated the NHPA by constructing a bike trail and dirt bike ramp without engaging in required public consultation, and GRANTED with leave to amend as to all other allegations.

(6)   Defendants' motion to dismiss plaintiffs' sixth claim for relief is GRANTED with leave to amend.

(7)   Defendants' motion to dismiss plaintiffs' seventh claim for relief is GRANTED with leave to amend.

(8)   Defendants' motion to dismiss plaintiffs' eighth claim for relief is GRANTED with leave to amend.

(9)   Defendants' motion to dismiss plaintiffs' ninth claim for relief is GRANTED without leave to amend.

(10)  Defendants' motion to dismiss plaintiffs' tenth claim for relief is GRANTED without leave to amend as

1          plaintiffs' AIRFA claim and with leave to amend as to

2          plaintiffs' RFRA claim.

3    (11) Defendants' motion to dismiss plaintiffs' eleventh

4          claim for relief is GRANTED without leave to amend.

5    (12) Defendants' motion to dismiss plaintiffs' twelfth claim

6          for relief is GRANTED without leave to amend.

7    (13) Defendants' motion to dismiss plaintiffs' thirteenth

8          claim for relief is GRANTED with leave to amend.

9    Plaintiffs are granted fifteen (15) days from the date of

10 this order to file an amended complaint in accordance with this

11 order. Defendants are granted thirty (30) days from the date of

12 service of plaintiffs' amended complaint to file a response

13 thereto.

14    IT IS SO ORDERED.

15 DATED: July 16, 2010

16 _____

17          FRANK C. DAMRELL, JR.
            UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28