UNITED STATES DISTRICT COURT

IN THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINNEMEM WINTU TRIBE, et al., | No. 2:09-CV-01072-KJM-KJN |
| Plaintiffs, | |
| v. | <u>ORDER</u> |
| UNITED STATES FOREST SERVICE, | |
| Defendant. | |

    Plaintiffs, the Winnemem Wintu tribe[1] and its leaders, move to compel completion of the administrative record and limited discovery from the United States Forest Service ("USFS"), a federal agency. Pls.' Mot. Compel Completion Administrative R. & Mot. Limited Discovery ("Mot.") at 1, ECF No. 107-1. The court heard argument on March 28, 2014, with Kevin L. Jayne appearing *pro hac vice* for plaintiffs and Lynn Trinka Ernce appearing for the USFS. For the following reasons, the court GRANTS IN PART and DENIES IN PART the motion.

/////

/////

---

[1] The tribe is not federally recognized.

1

I.  BACKGROUND

    A.  Procedural History

        Plaintiffs filed suit on April 19, 2009, naming several federal agencies and individuals as defendants. Compl. ¶¶ 5–12, ECF No. 1. Several rounds of motion practice narrowed both the claims and defendants at issue, *see* Sept. 15, 2009 Order at 27, ECF No. 24; July 16, 2010 Order at 54–55, ECF No. 51; July 27, 2012 Order at 31, ECF No. 82, and plaintiffs filed the now-operative third amended complaint on September 4, 2012, TAC at 1. The claims in the third amended complaint are also circumscribed by the court's order on the subsequent motion to strike. Mar. 29, 2013 Order at 1, ECF No. 95.

        The USFS lodged the administrative record on November 20, 2013, Notice Filing Administrative R. at 1, ECF No. 105, and a corrected administrative record on November 27, 2013, Notice Filing Corrected Administrative R. at 1, ECF No. 106. Finding the record lacking, plaintiffs filed the instant motion on February 28, 2014. Mot. at 25. The USFS opposed on March 14, 2014, Def.'s Opp'n to Mot. ("Opp'n") at 16, ECF No. 108, but nevertheless agreed to include some additional documents in the record, Copy Docs. Added Administrative R. at 1, ECF No. 110. Plaintiffs replied on March 21, 2014. Pls.' Reply to Opp'n at 9, ECF No. 112. As provided by court order, the parties filed supplemental briefing on May 13, 2014, Pls.' Supplemental Br. ("Pls.' Br.") at 2, ECF No. 118, and May 14, 2014, Def.'s Supplemental Br. ("Def.'s Br.") at 1, ECF No. 119, respectively.

    B.  Factual Allegations

        Plaintiffs have occupied the Shasta Lake and McCloud River area for six thousand years, and their historic and cultural sites populate the region. Third Am. Compl. ("TAC") ¶ 15, ECF No. 85. This action is premised on the USFS's alleged failure to protect six of these sites. *Id.* ¶¶ 16–40.

        1.  Nosoni Creek

        Prior to the 1980s, plaintiffs lived at the Nosoni Creek site. *Id.* ¶ 16. They claim to have initiated hunts at the site as early as "pre-1800" and assert the site contains

/////

1 "remains of past human life," including prehistoric house pits, a section of a prehistoric trail, the remains from a tribal hunting cabin, graves, skeletal remains, pottery and tools. *Id*.

In 2000, the USFS began a project to replace the Nosoni Creek bridge. *Id*. ¶ 17. The USFS purportedly allowed construction workers to cut down three ancient "grandfather" grapevines used as medicine by the tribe for over 100 years, as well as an oak tree. *Id*. Plaintiffs allege that defendant caused further harm to the site when its contractors dumped dirt there without any archaeological monitoring or guidance, as well as when they bulldozed and filled a vegetated area, rendering a ceremonial area inaccessible. *Id*. ¶ 18.

Additionally, in 2001 to 2002, the USFS permitted a truck ramp to be built leading to the creek. *Id*. ¶ 19. This ramp was used on a daily basis by logging trucks that drove over the site, parked on the truck ramp and drew water from the creek four to five times each day. *Id*. These trucks also spilled diesel onto the site and into the creek. *Id*. Plaintiffs aver this activity has destroyed archeological resources at the site. *Id*.

Plaintiffs were not notified prior to commencement of the bridge replacement or the truck ramp, and defendant did not allow any public consultation process. *Id*. ¶ 20. Ignoring plaintiffs' persistent complaints, USFS has not done anything to remedy the alleged harms. *Id*. Work was done in July 2010 to address problems with the truck ramp, but plaintiffs were excluded from discussions of how to mitigate any damage. *Id*. ¶ 21.

2. <u>Dekkas Site and Gilman Road</u>

The Dekkas site is a "rock island" that rises above the McCloud River. *Id*. ¶ 22. Plaintiffs allege that in prehistoric times, Dekkas contained a lower bench where manzanita plants grew, a middle bench that included a dance circle, cisterns and a sacred fire pit and an upper bench with numerous pit houses. *Id*. Former tribal leader Florence Jones used the fire pit for healing activities until her death in 2003. *Id*. The fire pit was surrounded by special rocks used to tell the journey of the life of the tribe, and the cisterns were used in a doctoring ceremony. *Id*. Wood from the manzanitas provided the sole source of fuel for the fire pit. *Id*. ¶ 23.

/////

In 2005, the USFS consulted with plaintiffs regarding the site, agreed that the old-growth manzanitas were an important resource, filed a "protection plan" and flagged the area to be preserved. *Id*. Nevertheless, in February 2005, the USFS destroyed the manzanitas. *Id*. The USFS has also allowed open access to the site, leading to ongoing damage from camping, the use of ATVs and other recreational activity. *Id*. ¶ 24. The damage includes vehicles driving over dance grounds, burning trash and dislodging rocks around the sacred fire pit. *Id*. Despite requests, the USFS has not developed a mitigation plan to address the damage, *id*., or accurately reported the damage to the public, *id*. ¶ 48.

The USFS also implemented the Gilman Road Shaded Fuelbreak project on the Dekkas site in 2001, 2003 and 2005. *Id*. ¶ 25. Plaintiffs allege this project was carried out without any meaningful consultation and damaged culturally important trees on the site. *Id*. Further, although the project was completed in 2005, related ongoing cleanup continues to harm important resources. *Id*.

### 3. Coonrod Flat

Coonrod Flat is a large, open, dry meadow on the lower slopes of Mount Shasta, bordered by Ash Creek to the north and old river beds to the south. *Id*. ¶ 26. The site includes a prehistoric village with a fire pit used for the "August Ceremony," and house pits to the northeast along the creek. *Id*. The site is listed on the National Register of Historic Places ("National Register"). *Id*.

The USFS allows campers, hikers, hunters and off-road vehicles to trespass over ceremonial areas causing damage to the site. *Id*. ¶ 27. In 2005, the USFS issued a grazing permit for a 5,000 acre allotment to a rancher, allowing cattle to defecate on the sacred fire pit area, create habitual paths six-to-eight inches deep and degrade the riparian area near Ash Creek. *Id*. To minimize the damage, plaintiffs asked to rebuild a fence to control access to the site, but the USFS did not respond. *Id*. ¶ 28.

### 4. Buck Saddle

Plaintiffs aver that the Buck Saddle prayer site is an historic site due to its age and association with past spiritual and religious activities. *Id*. ¶ 29. The USFS allowed damage

4

to occur at the site in 2007 when, without performing an environmental analysis, it permitted the construction of a bike path on the Clikapudi trail that disturbed and damaged the site. *Id*. ¶¶ 29–30. Despite complaints by plaintiffs, the USFS continues to permit ongoing degradation and has not developed a plan of mitigation or protection of these resources. *Id*. ¶ 30.

### 5. Rocky Ridge

Rocky Ridge is a prehistoric village site connected to a larger village complex. *Id*. ¶ 31. The village contained approximately fifteen house pits and a burial site and likely contains remains of human culture, including food stuffs, broken crockery, stone and metal tools and organic matter. *Id*. Plaintiffs aver the site is eligible for listing on the National Register due to its age, its association with historic events such as doctoring, herbal medicine, cultural and religious ceremonies and its potential to yield archaeological resources. *Id*.

Jones Valley Resort operates a permitted parking lot near the site. *Id*. ¶ 32. The resort has been using the Rocky Ridge site adjacent to the permitted parking lot as an overflow parking lot for recreational vehicles and boat trailers over the last decade. *Id*. The USFS maintains a gate to prevent access to the site, but it has allowed the Resort to install its own lock on the gate, thereby enabling the Resort use of the lot for parking. *Id*. Plaintiffs have complained to the USFS about the parking lot and the damage to resources caused by its use, but the USFS has not responded to plaintiffs' complaints or completed a section 106 process.[2] *Id*. ¶¶ 32, 64.

### 6. Antler's Bridge

The Antler's Bridge site is the location of a large village and burial sites from the pre-contact era through the 1930s. *Id*. ¶ 33. The site, located on USFS land, was disrupted by the construction of the first Antler's Bridge in the 1940s. *Id*. That construction and related flooding of the Shasta Dam Reservoir required the hasty removal of many burial sites, though

---

[2] Section 106 of the National Historic Preservation Act requires federal agencies to account for the effects of their actions on historic properties and permit the Advisory Council on Historic Preservation a reasonable opportunity to comment. 16 U.S.C. § 470. However, the regulation implementing section 106 mandates consultation with only federally recognized Indian tribes. 36 C.F.R. § 800.

only remains identified by name were exhumed. *Id*. Human remains have been found at the site as late as the 1980s, and other archaeological artifacts were discovered in 2010. *Id*.

On January 11, 2010, construction crews working on the Antler's Bridge project dug through a deep and extensive midden layer that was part of the site. *Id.* ¶ 35. Plaintiffs allege that, as the primary public land manager of this area, the USFS was responsible for the care and protection of archaeological resources that were excavated. *Id.* Despite plaintiffs' requests, however, the USFS did not consult the tribe or halt work and handle the midden in an appropriate and protective manner. *Id.* ¶ 36. Further, although asked to sift the midden for burial remains, the USFS and CalTrans ignored the request. *Id.*

Plaintiffs also allege that one of the cultural artifacts discovered at the site was a "medicine rock," an object used for spiritual healing. *Id.* ¶ 37. Nonetheless, again without consulting the tribe, the USFS confiscated the rock and refused to disclose its whereabouts. *Id.* Plaintiffs also claim they have never been informed of the following: how the excavated midden was handled and ultimately placed; if the midden was sifted for burial remains; what other items were found; or the whereabouts and custody of those items. *Id.* ¶ 38. Finally, they claim the USFS excluded the tribe from meetings to develop a plan to resolve the inadvertent effects of the excavation. *Id.* ¶ 72.

    C.    <u>Third Amended Complaint</u>

Plaintiffs bring their claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 704, 706. The following claims are presently before the court: National Historic Preservation Act ("NHPA") claims for Nosoni Creek, Dekkas and Gilman Road, Coonrod Flat, Buck Saddle and Rocky Ridge; an Archaeological Resource Protection Act ("ARPA") claim for Antler's Bridge; and a National Environmental Protection Act ("NEPA") claim for Buck Saddle. TAC ¶¶ 41–75.

As to each statute, plaintiffs specifically allege as follows. The USFS violated the NHPA by:

- "[F]ailing to identify Nosoni Creek as a historic site; failing to undertake a [section] 106 process in conjunction with federal undertakings at [Nosoni Creek,] a site eligible for

6

the National Register; and approving a 2000 bridge project and subsequent truck ramp project at Nosoni Creek . . . without engaging in the consultation process required by NHPA," *id.* ¶ 43;

- "[F]ailing to engage in meaningful consultation [with plaintiffs] in connection with the Gilman Road Shaded Fuelbreak project on the Dekkas site" and "violat[ing] its Programmtic Agreements related to the Dekkas site under NHPA by: (1) cutting and destroying cultural resources . . . ; (2) failing to include an accurate report on the destruction of the Manzanita in annual reports; (3) failing to monitor project activities at the site; (4) failing to make annual reports available to the public; and (5) failing to comply with public participation requirements," *id.* ¶ 48;
- "[G]ranting a permit to graze cattle on 5,000 acres of land on the Coonrod site" without "engag[ing] in the [section 106] process," *id.* ¶ 53;
- "[C]reating a recreational bike trail and placing it directly through [the Buck Saddle prayer site]; failing to disclose potential project impacts to [plaintiffs] before creating the bike trail, and failing to take all possible measures to preserve and protect the . . . site"; "enabling on-going degradation of ecosystems and natural resources at the site; permitting common access to the site without taking steps to protect sacred artifacts and areas" and "failing to develop a protection plan or consult with [plaintiffs] before permitting the bike path," *id.* ¶¶ 58–59; and
- "Tacit[ly]" approving the Jones Valley Resort's use of the Rocky Ridge site as an overflow parking lot without completing a section 106 process to "avoid, minimize, or mitigate the adverse effects of the parking lot," *id.* ¶ 64.

The USFS violated the ARPA by excluding plaintiffs from both the consultation process regarding excavation at Antler's Bridge and meetings to develop a plan to resolve the inadvertent effects of excavation. *Id.* ¶ 72. And, finally, the USFS violated the NEPA by creating a bike trail through Buck Saddle, in the manner described above, without conducting an environmental analysis of the trail's effects. *Id.* ¶¶ 58–59.

/////

The parties dispute whether plaintiffs have stated a NEPA claim for Nosoni Creek. *Compare* Pls.' Br. at 1, *with* Def.'s Br. at 1. The USFS insists the "omission of [the Nosoni NEPA] claim from the TAC, when [plaintiffs] previously asserted [the claim] in their Second Amended Complaint, constitutes voluntary dismissal . . . ." Def.'s Br. at 1. In support, it notes plaintiffs' claim regarding Nosoni Creek now substantively alleges only violations of the NHPA and APA,[3] whereas it previously "devoted an entire section to the alleged Nosoni Creek NEPA violation." *Id.* at 2 (citing SAC ¶¶ 82–85). Further, the agency contends, "plaintiffs should not be granted leave to amend" because "amendment would be futile and would cause undue delay and prejudice to" the USFS as "plaintiffs already have had the opportunity to amend their complaint three times over the past five years." *Id.* at 1.

Plaintiffs concede the claim "could have [been] more precisely pled" but argue it is nonetheless sufficiently stated under Federal Rule of Civil Procedure 8. Pls.' Br. at 1–2. Citing the Rule's "liberal notice pleading standards," they characterize the claim as "properly pled" because:

> (1) . . . the Court held that [plaintiffs] had properly pled [the claim] in [their Second Amended Complaint] . . . ; (2) in the " . . . Claims for Relief" section of the TAC describing the Nosoni Creek claims[, plaintiffs] explicitly recite "NEPA" as one of the Nosoni Creek claims . . . ; (3) the factual averments and statutory framework averments in the TAC fully support the existence of a Nosoni NEPA claim . . . ; (4) those factual averments and statutory framework averments were explicitly incorporated in the Nosoni Creek claims section of the TAC . . . ; and (5) the [USFS] has always been on full notice that [plaintiffs are] pursuing [a] Nosoni NEPA Claim [sic].

*Id.* at 2 (emphases omitted). Even in the event the court finds the claim is not properly pleaded, plaintiffs contend, leave to amend is proper because:

> (1) . . . the [USFS] has been and continues to be on full notice that [plaintiffs] are pursuing a NEPA claim for Nosoni Creek; (2) the [USFS] will not suffer any prejudice because of another amendment; (3) another amendment would not burden the Court nor [sic] the [USFS], nor would it delay this litigation; and (4) [plaintiffs] would suffer if [they] lost the right to [the] Nosoni

---

[3] Although the complaint includes an ARPA claim regarding Nosoni Creek, that claim has already been dismissed with prejudice and may not be reasserted. July 27, 2012 Order at 21, ECF No. 82.

8

> NEPA Claim [sic] because that claim has already been . . . substantially proven on the current (Corrected) Administrative Record . . . ."

*Id.* at 2–3 (emphases omitted).

II. NOSONI CREEK NEPA CLAIM

    A. Pleading Standards

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). In turn, this statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must "give fair notice and . . . enable the opposing party to defend itself effectively," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), while "[t]he plausibility standard . . .[, though] not akin to a 'probability requirement,' . . . asks for more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]," "'labels and conclusions' [and] . . . 'formulaic recitation[s] of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

Upon filing of the operative complaint, the previous complaint was "supercede[d] . . . and render[ed] without legal effect . . . ." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012). As stated in the operative complaint, plaintiffs' Nosoni Creek claim substantively alleges violation of only the NHPA and APA. TAC ¶¶ 41–46. Although it mentions NEPA in the subtitle of the Nosoni Creek claim, the complaint references the statute in the body of the claim only to note that it "requires the federal government to consider environmental and cultural values when assessing federal projects, fully disclose potential project impacts to affected Indian tribes, and take all possible measures to preserve and protect historic, cultural and natural aspects of the national heritage." *Id.* ¶ 42. The complaint does not, however, allege that the USFS failed to comply with these requirements, much less proffer factual matter supporting the plausibility of such a claim. Accordingly, there is no "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P.

8(a)(2). Plaintiffs have thus failed to state a NEPA claim regarding Nosoni Creek, *id.*; *Iqbal*, 556 U.S. at 678, and the court deems it voluntarily dismissed, *Shadd v. Cnty. of Sacramento*, No. 2:12-CV-02834-MCE-KJN, 2013 WL 6389132, at *1 n.2 (E.D. Cal. Dec. 6, 2013) (citing *Lacey*, 693 F.3d at 927).

B.  Leave to Amend

Despite dismissal, "[t]he court should freely give leave [to amend the pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2). Indeed, the Ninth Circuit has "stressed Rule 15's policy of favoring amendments," *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989), and mandated that "[i]n exercising its discretion [to grant or deny leave to amend,] 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities,'" *D.C.D. Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Consistent with this admonition, "[c]ourts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies . . . , undue prejudice to the opposing party . . . , [or] futility of amendment . . . ." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Under this standard, the court must grant leave to amend. Although the USFS argues amendment will unduly delay the case, thereby causing prejudice, the court disagrees. Permitting amendment will delay the case's progression by only a short period of time, which in the context of litigation dating back to 2009, is insignificant. Additionally, there is no evidence of bad faith or dilatory motive, defendant has been aware of the claim as a possible claim and there has been no previous failure to correct this deficiency. Lastly, as addressed by the court in its previous order, amendment is not futile. July 27, 2012 Order at 23–24 (citing *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010)). Thus, in this respect only, the court grants leave to amend.

/////

/////

III.  ADMINISTRATIVE RECORD

   A.  Legal Standard

When reviewing agency action under the APA, the court "will reverse the agency action only if the action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2004) (citing 5 U.S.C. § 706(2)).  An action is arbitrary and capricious if

> the agency fails to consider an important aspect of the problem, . . . the agency offers an explanation for the decision that is contrary to the evidence, . . . the agency's decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise, or . . . the agency's decision is contrary to the governing law.

*Id.* (citation omitted).  "Although [the court's] inquiry must be thorough, the standard of review is highly deferential; the agency's decision is 'entitled to a presumption of regularity,' and [the court] may not substitute [its] judgment for that of the agency." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 100 (1977)).

In considering a challenge, "courts reviewing an agency decision are [generally] limited to the administrative record." *Lands Council*, 395 F.3d at 1029 (citing *Fla. Power & Light Co. v.* Lorion, 470 U.S. 729, 743–44 (1985)).  However, they must "review the whole [administrative] record or those parts . . . cited by a party . . . ." 5 U.S.C. § 706.  "The 'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis in original) (citing *Exxon Corp. v. U.S. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981)); *see also Overton Park*, 401 U.S. at 420 (holding courts must consider "the full administrative record that was before the [agency] at the time [it] made [the] decision").

/////

/////

Only in the following "limited circumstances" are "district courts . . . permitted to admit extra-record evidence":

> (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision,"
>
> (2) if "the agency has relied on documents not in the record,"
>
> (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or
>
> (4) "when plaintiffs make a showing of agency bad faith."

*Lands Council*, 395 F.3d at 1030 (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). "These limited exceptions [("the *Lands Council* exceptions")] operate to identify and plug holes in the administrative record," and "are narrowly construed and applied" to ensure "that the exception does not undermine the general rule." *Id.* (citations omitted). "Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making." *Id.*

B.  Analysis

Advancing two arguments, plaintiffs move to compel production of a number of "documents and materials that [they] believe[]" to have been omitted from the record. Mot., Ex. A at 1–10, ECF No. 107-2. First, they argue "the USFS's administrative record is [so] *woefully incomplete*" that the court "cannot effectively review the USFS's agency actions . . . ." Mot. at 1 (emphasis in original). Second, they argue the USFS omitted relied-upon documents that should properly be included in the record. *See id.* at 14–21.

Except for certain documents it has agreed to add to the record, *see* Copy Docs. Added Administrative R. at 1, the USFS opposes the motion, Opp'n at 1. It insists plaintiffs have failed to rebut the presumption that the administrative record is complete and argues further that many of the requested documents are irrelevant to any stated claim. *Id.* at 8–13.

/////

12

Plaintiffs also move for limited discovery on similar bases. Mot. at 21. As constituted, plaintiffs contend, the record is insufficient to "determine the USFS's decision-making process" or "the true reasons for the USFS's actions[,] given the strong possibility that USFS has acted in bad faith." *Id.* at 1. Thus, they seek to depose "current USFS personnel who are most familiar with the Winnemem for the six . . . sites at issue . . . ." *Id.* at 21.

The USFS again opposes the motion, arguing plaintiffs have neither "prove[n] that the existing record is inadequate," Opp'n at 14, nor "show[n] . . . bad faith [sufficient] to justify extra-record evidence," *id.* at 15. Further, it insists, "as a practical matter, [that] there is no need for discovery because, in response to plaintiffs' requests and this motion, the [USFS has] conducted an additional comprehensive search, located additional documents that it . . . agreed to add to the record, and confirmed that no other documents exist." *Id.* at 16.

The court construes both the motion to compel completion of the record and the motion for limited discovery as a motion to supplement the record. *See Portland Audubon Soc'y v. Endangered Species Comm'n*, 984 F.2d 1534, 1536 (9th Cir. 1993); *Pub. Power Council v. Johnson*, 674 F.2d 791, 793–94 (9th Cir. 1982). As such, the court evaluates all arguments under the applicable first, second and fourth prongs of the *Lands Council* standard discussed above. *Idaho State Snowmobile Ass'n v. U.S. Forest Serv.*, No. 3:12-CV-447-BLW, 2014 WL 971151, at *2 (D. Idaho Mar. 12, 2014) (citing *Pub. Power Council*, 674 F.2d at 793–94) (applying *Lands Council* standard to both motion to supplement record and motion for limited discovery).

1. Necessity

Supplementation may be proper where "necessary to determine whether the agency has considered all relevant factors and has explained its decision . . . ." *Lands Council*, 395 F.3d at 1030 (internal quotation marks omitted). At least one district court in the Ninth Circuit has applied a "clear evidence" standard to the burden plaintiff faces to successfully argue necessity. *In re Delta Smelt Consolidated Cases*, No. 1:09-CV-1053 OWW DLB, 2010 WL 2520946, at *2 (E.D. Cal. Jun. 21, 2010) ("[p]laintiffs must present clear evidence that the existing [administrative record] is so inadequate that it will frustrate judicial review," citing

13

*Rybacheck v. EPA*, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990)).  It clearly is plaintiff's burden to make an adequate showing.  *See Animal Defense Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988) (holding "contention that the district court should have permitted discovery and extended its review beyond the administrative record is without merit" because plaintiff "makes no showing that the district court needed to go outside the administrative record").  "Because this exception is so broad in its formulation, courts [are] reluctant to invoke it."  *Pub. Power Council*, 674 F.2d at 794.

To permit judicial review, the record must enable the court to determine whether the agency has "fail[ed] to consider an important aspect of the problem, . . . offer[ed] an explanation . . . contrary to the evidence, . . . [or rendered a] decision [that is] so implausible . . . it could not be ascribed to a difference in view or be the product of agency expertise . . . or . . . [that is] contrary to the governing law."  *Lands Council*, 395 F.3d at 1026 (citation omitted).  Necessity exists only where the record is so scant that the court cannot carry out this function.  *See Rybacheck*, 904 F.3d at 1296 n.25.

Here, plaintiffs argue supplementation is necessary because "the administrative record does not explain *how* the USFS came to its decisions regarding . . . the six sacred sites . . . ."  Mot. at 1 n.2 (emphasis in original).  Aside from this footnote, however, they pursue the argument no further.  Thus, as conclusory statements do not satisfy the required showing, the court may not find the record so deficient as to preclude effective judicial review.  Supplementation on this ground is denied.

2.   Omitted Documents

Supplementation may also be proper where "the agency has relied on documents not in the record . . . ."  *Lands Council*, 395 F.3d at 1030 (internal quotation marks omitted).  However, "[c]ommon sense dictates that the agency determines what constitutes the 'whole' administrative record because 'it is the agency that did the "considering," and that therefore is in a position to indicate initially which of the materials were "before" it—namely, were "directly or indirectly considered."'"  *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (internal alteration omitted) (quoting *Fund*

14

*for Animals v. Williams*, 245 F. Supp. 2d 49, 57 (D.D.C. 2003)). *But see Thompson*, 885 F.2d at 555 ("[The record] 'is not necessarily those documents that the *agency* has compiled and submitted as "the" administrative record.'" (emphasis in original) (quoting *Exxon*, 91 F.R.D. at 32)). For the same reason, the agency's certification of the administrative record is entitled to a "strong presumption" of regularity. *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1329 (D.C. Cir. 1984); *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) ("An agency's designation and certification of the administrative record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity." (citing *Bar M.K. Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)); *see also Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984) ("A presumption of good faith attends agency action.")).

To rebut this presumption, a plaintiff "must put forth concrete evidence to show that the record" is incomplete. *Pac. Shores*, 448 F. Supp. 2d at 6; *see also Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1232 (E.D. Cal. 2013) (citing *Bar M.K. Ranches*, 994 F.2d at 740) (holding presumption may only be overcome by "clear evidence"). Such evidence requires that a plaintiff: (1) "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record," *Pac. Shores*, 448 F. Supp. 2d at 6; and (2) "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record," *City of Duluth v. Jewell*, No. 12-cv-1116, 968 F. Supp. 2d 281, 288 (D.D.C. 2013). It is insufficient for a plaintiff to "simply . . . assert[] that the documents are relevant, were before . . . [the agency] at the time it made its decision, and were inadequately considered." *Pac. Shores*, 448 F. Supp. 2d at 6.

Here, plaintiffs claim the USFS has omitted numerous documents from the record. Joint Status Report, Ex. A. at 1–22, ECF No. 115. For several of these alleged

omissions, the USFS attests, upon penalty of perjury,[4] that "[a]fter a reasonable and diligent search, no such documents exist." *Id.* at 1–4, 8–11, 13. Plaintiffs nonetheless argue that "[d]iscovery is needed to confirm non-existence of [the disputed] documents" because, despite USFS assurances, they believe it "[h]ighly likely that such documents [do] exist." *Id.* However, as they offer only unsupported speculation, plaintiffs do not provide "reasonable, non-speculative grounds" for that belief. *Pac. Shores*, 448 F. Supp. 2d at 6. Consequently, as plaintiffs have failed to "put forth concrete evidence . . . show[ing] that the record" is incomplete in this manner, the court must reject this argument. *Id.*

Plaintiffs also argue that the USFS's initial omission of certain documents nullifies its attestation to having completed a "reasonable and diligent search." *See* Mot. at 14. However, as the USFS inadvertently omitted only one document and plaintiffs cite no case law to support this argument, the court finds it unavailing.

For other omissions, the USFS argues it need not include the requested documents because those documents "do not relate to any specific [USFS] action challenged" in the operative complaint. Opp'n at 5; *see also* Joint Status Report, Ex. A. at 2, 6–7, 13–22. In so arguing, the USFS takes the position it is required to include only "documents and materials relevant to the specific agency actions that are at issue in this litigation." Opp'n at 10. The USFS articulates an incorrect standard. Instead, regardless of relevance to a stated claim, the USFS is to include "all documents directly or indirectly considered by the agency decision-makers . . . includ[ing] evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555 (emphasis omitted).

Relevance to a claim does not necessarily correlate with whether a document was "directly or indirectly considered." *Cf. Pac. Shores*, 448 F. Supp. 2d at 4 (citing *Ammex, Inc. v. United States*, 62 F. Supp. 2d 1148, 1156 (C.I.T. 1999)). For instance, though the complaint does not currently include a NEPA claim for Nosoni Creek, this absence fails to preclude the possibility that documents prepared under NEPA were also considered by the

---

[4] A filing containing false representations to the court also subjects counsel to sanctions. FED. R. CIV. P. 11(c)–(d).

1    agency when making decisions unrelated to NEPA but regarding the same site.  The application
2    of an incorrect standard constitutes "reasonable, non-speculative grounds for the belief that the
3    documents were considered by the agency and not included in the record," *Pac. Shores*, 448 F.
4    Supp. 2d at 6, and the court further finds that plaintiffs have "identif[ied] the materials
5    allegedly omitted from the record with sufficient specificity," *City of Duluth*, 968 F. Supp. 2d
6    at 288; Joint Status Report, Ex. A at 2, 6–7, 13–22.  Plaintiffs have "put forth concrete evidence
7    . . . show[ing] that the record" is incomplete, and the court orders the USFS to supplement the
8    record with "all documents directly or indirectly considered by agency decision-makers" in
9    connection with any action or decision at issue here that were previously withheld on this basis.
10   *See* Joint Status Report, Ex. A at 2, 6–7, 14–22 (USDA-0002–22, 104, 106, and all requested
11   documents relating to the Antler's Bridge site).

12              Regarding still other alleged omissions, the USFS asserts that "[t]he [r]ecord
13   [p]roperly [d]oes [n]ot [i]nclude [d]ocuments [f]or [n]on-[e]xistent [p]rojects."  Opp'n at 12.  It
14   reasons that "since there has never been a federal undertaking for [the alleged truck ramp
15   project at Nosoni Creek] . . . , it . . . is to be expected that . . . documents [related to the project]
16   do not exist." *Id.* at 12–13.  This argument again misses the mark.  It is for the court to
17   determine whether final agency action has occurred, not the agency itself.  Regardless of how
18   the truck ramp is denominated, plaintiffs seek "[a]ll documents regarding Section 106 and
19   NEPA processes concerning the separate Water Truck Ramp adjacent to the Nosoni Bridge."
20   Joint Status Report, Ex. A. at 4.  The USFS's faulty reasoning for failing to produce the
21   documents provides "reasonable, non-speculative grounds for the belief that the documents
22   were considered by the agency and not included in the record," *Pac. Shores*, 448 F. Supp. 2d at
23   6, and the court again finds that plaintiffs have "identif[ied] the materials allegedly omitted
24   from the record with sufficient specificity," *City of Duluth*, 968 F. Supp. 2d at 288; Joint Status
25   Report, Ex. A. at 4.  Plaintiffs having "put forth concrete evidence . . . show[ing] that the
26   record" is incomplete in this manner, the court orders the USFS to further supplement the
27   record with "all documents directly or indirectly considered by agency decision-makers" in
28   /////

17

1 connection with "the separate Water Truck Ramp adjacent to the Nosoni Bridge." *See* Joint
2 Status Report, Ex. A. at 4 (USDA-00049–50).
3       Plaintiffs also seek "[a]ll documents regarding internal USFS review and
4 approval of [the] Rocky Ridge overflow parking lot." Joint Status Report, Ex. A at 13.
5 However, as the USFS attests that "after a reasonable and diligent search, no such documents
6 exist," *id.*, the court denies the motion in this regard.

      3.    <u>Bad Faith</u>

8       Finally, supplementation may be proper "when plaintiffs make a showing of
9 agency bad faith." *Lands Council*, 395 F.3d at 1030 (internal quotation marks omitted).
10 However, because "inquiry into the mental processes of administrative decisionmakers is
11 usually to be avoided," "there must be a strong showing of bad faith or improper behavior
12 before such inquiry may be made." *Overton*, 401 U.S. at 420. "[S]imply raising the *specter* of
13 improper motive and bad faith . . . does not establish the requisite strong showing of bad faith
14 or improper behavior necessary to justify extra-record discovery." *Gordian Medical, Inc. v.*
15 *Sebelius*, No. CV 10-3933CAS (FFMx), 2011 WL 2412784, at *5 (C.D. Cal. June 13, 2011)
16 (emphasis in original) (internal quotation marks omitted); *see also Protect Lake Pleasant,*
17 *L.L.C. v. Connor*, No. CIV 07-0454-PHX-RCB, 2010 WL 5638735, at *4 (D. Ariz. July 30,
18 2010) ("Merely incanting the phrase 'bad faith,' . . . is not tantamount to a strong showing of
19 bad faith or improper behavior . . . ." (internal quotation marks omitted)).
20       Here, as evidence of bad faith, plaintiffs rely on "the woeful state of the
21 administrative record" and the "inexplicable" and "recalcitrant" actions of the USFS. Mot. at
22 21, 23. These actions include the failure to save plaintiffs' "sacred medicinal grape root" at
23 Nosoni Creek, the pouring of dirt on the same site and the truck ramp project, all of which
24 purportedly point to "the strong possibility of bad faith." *Id.* at 24.
25       Plaintiffs' arguments are insufficient to permit supplementation. An allegedly
26 strong possibility is not a strong showing. Plaintiffs offer no evidence to show the actions
27 described above are indicative of bad faith or improper behavior, conceding "[t]he motivation
28 behind the USFS's decision-making is unknown . . . ." *Id.* Instead they speculate, without

support, that the agency actions were taken "perhaps" because the USFS does not "believe [plaintiffs] are 'real' Native Americans" or "perhaps" because plaintiffs have been "too vocal in asserting their rights" or "perhaps" because "the USFS does not believe it should have to consult" plaintiffs. *Id.* In short, they raise only "the *specter* of improper motive and bad faith . . . ." *Gordian Medical, Inc.*, 2011 WL 2412784, at *5 (emphasis in original). Supplementation on this ground is, therefore, denied.

IV. CONCLUSION

As set forth above, the court GRANTS IN PART and DENIES IN PART the motion. The court GRANTS the motion as to:

1. "[A]ll documents directly or indirectly considered by agency decision-makers" in connection with any action or decision at issue here that were previously withheld because "[t]he TAC contains no [relevant] claim," Joint Status Report, Ex. A. at 2, 6–7, 14–22 (USDA-0002 –22, 104, 106, and all requested documents relating to the Antler's Bridge site); and

2. "[A]ll documents directly or indirectly considered by agency decision-makers" in connection with "the separate Water Truck Ramp adjacent to the Nosoni Bridge," *id.* at 4 (USDA-00049–50).

The motion is DENIED in all other respects.

Consistent with this order, plaintiffs may amend the complaint to properly state a NEPA claim for Nosoni Creek within fourteen days of the filing of this order.

Additionally, the court sets a status conference for **October 2, 2014**. At least seven days prior, the parties must submit a joint statement in accordance with the court's standing order and the Local Rules.

IT IS SO ORDERED.

DATED: July 24, 2014.

UNITED STATES DISTRICT JUDGE