Jayne E. Fleming (SBN 209026)
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone:  +1 415 543 8700
Facsimile:  +1 415 391 8269

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Winnemem Wintu Tribe, in their tribal and individual capacities; Caleen Sisk Franco, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>United States Forest Service.<br><br>Defendants. | No.: 2:09-CV-01072 KJM KJN<br><br>**FOURTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; PETITION FOR WRIT OF MANDAMUS**<br><br>Honorable Kimberly J. Mueller |

## I.  NATURE OF ACTION

1.  This is an action against the agency Defendant for injunctive, mandamus and declaratory relief.  Plaintiffs (collectively "Winnemem" or "Winnemem Wintu Tribe") ask this Court for an order prohibiting Defendant from further actions which violate federal laws protecting gravesites, archeological artifacts, human remains and sacred sites; an order prohibiting defendant from interfering with Winnemem's right to engage in religious and ceremonial activities on sacred sites, and a declaratory judgment declaring unconstitutional and illegal Defendant's activities that interfere with, fail to protect and preserve traditional resources of religious and cultural importance.

2.  The Fourth Amended Complaint also requests a writ of mandamus compelling the agency Defendant to cease all plans for federal projects that may impact traditional resources of religious and cultural importance until such time as the Defendant has complied with its obligations

to protect those resources pursuant to federal law, regulation and policy, as well as to enter into meaningful pre-decision consultation regarding the projects with the Winnemem, as required by federal statutes, regulations and executive orders.

## II.  JURISDICTION

3. This Court has jurisdiction over this civil action as follows:

4. 28 U.S.C. § 1331 (civil actions arising under the Constitution, laws, or treaties of the United States);

5. 28 U.S.C. § 1361 (actions to compel an officer of the United States to perform his duty);

6. 28 U.S.C. §1362 actions brought by Indian Tribes wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States);

7. 16 U.S.C. §§ 470 cc et. seq. (Archeological Resource Protection Act);

8. 25 U.S.C. § 3002 et seq. (Native American Graves Protection and Repatriation Act);

9. 42 U.S.C. § 4321 et seq. (National Environmental Policy Act of 1969);

10. 16 U.S.C. 470 et seq. (National Historic Preservation Act); and

11. 5 U.S.C. §§ 702, 706 (Administrative Procedure Act).

12. The Court may issue declaratory and injunctive relief pursuant to these statutes and 28 U.S.C. §§ 2201 and 2202, as well as Fed. R. Civ. P. 57 and 65(a).

13. The Winnemem have exhausted administrative remedies where available. The Winnemem have requested that Defendant correct its wrongdoing. Defendant has refused to take any remedial action, refused to grant the Winnemem good faith consultation, and constructively and effectively issued final agency decisions denying relief by their failure to timely answer the Winnemem's appeals regarding the matters that are the subject of this Complaint. The final agency decisions at issue here are judicially reviewable under the Administrative Procedures Act, 5 U.S.C. § 702 et seq. Further, there is an actual controversy within the jurisdiction of this Court. Declaratory and injunctive relief, and mandamus, will effectively adjudicate the statutory rights of the Winnemem.

### III. VENUE

14. Venue in the Eastern District is proper under 28 U.S.C. § 1311(e) because this is a civil action against the United States, an agency thereof, and officers and employees of the United States, acting or withholding action; Plaintiffs reside within this district; the property that is the subject of this lawsuit lies within this district; and a substantial part of the events or omissions giving rise to the claims occurred within this district.

### IV. PARTIES

#### A. Plaintiffs

15. Plaintiff Caleen Sisk is the Spiritual Leader and Tribal Chief of the Winnemem Wintu

16. Indian Tribe. The members of the Winnemem Tribe, as well as its governing body, reside in Shasta County California. The Cultural Property, homeland of the Winnemem, is centered on the McCloud River from Mt. Shasta to the north to the terminus at Shasta Dam, and also extends east up the lower reaches of the Pit River to Big Bend, and west to Sacramento River then northward, encompassing Shasta Lake. The Winnemem Wintu Tribe and its ancestors have lived in the Shasta Lake and McCloud River area for six thousand years.

#### B. Defendant

17. The United States Forest Service ("USFS" or "Defendant") is an Agency of the United States Department of Agriculture.

### V. STATUTORY FRAMEWORK

18. **The National Historic Preservation Act** (NHPA) [16 U.S.C. 470 et seq.] ensures that prior to any significant action undertaken or approved by the federal government, local constituents and other interested parties are consulted as a means to preserve important historical and cultural resources. The fundamental purpose of the NHPA is to ensure the preservation of historical resources. To further that goal, Section 106 of the NHPA requires a federal agency in charge of an undertaking where federal funds will be expended to "take into account the effect of [an] undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register." 16 U.S.C. § 470f.

19. Federal agencies must comply with the Advisory Council on Historic Preservation's regulations implementing section 106. *See* 16 U.S.C. §470s. These obligations include: making a reasonable and good faith effort to identify historic properties, [36 C.F.R. § 800.4(b)]; determining whether identified properties are eligible for listing on the National Register based on criteria in 36 C.F.R. § 60.4; assessing the effects of the undertaking on any eligible historic properties found, [36 C.F.R. §§ 800.4(c), 800.5, 800.9(a); and determining whether the effect will be adverse, [36 C.F.R. §§ 800.8(e), 800.9(c).

20. **The National Environmental Policy Act** (NEPA) [42 U.S.C. § 4321 et seq.] imposes a duty on the United States to consider environmental and cultural values when assessing proposed federal projects; to consult with and fully disclose all relevant information to potentially affected Indian tribes; and to use all practicable means to improve and coordinate federal plans, functions, programs, and resources to preserve important historic, cultural and natural aspects of the national heritage. NEPA requires federal agencies to prepare an environmental impact statement ("EIS") for any "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. §4332(2)(c). Prior to preparing an EIS, an agency may prepare an Environmental Assessment ("EA"), and if it determines no significant effect on the environment will result, it may decline to prepare an EIS. 40 C.F.R. §§ 1508.9(a), 1508(13).

21. **The Archaeological Resource Protection Act** (ARPA) [16 U.S.C. §§ 470 cc et seq.] imposes a duty on the United States to preserve and avoid damaging cultural resources belonging to or affiliated with Indian tribes. The purpose of the ARPA is "to secure, for the present and future benefit of the American people, the protection of archaeological resources and sites which are on public lands and Indian lands, and to foster increased cooperation and exchange of information between governmental authorities, the professional archaeological community, and private individuals." (Sec. 2(4)(b)).

22. **The Native American Graves Protection and Repatriation Act of 1990** [25 U.S.C. § 3001] governs the intentional excavation or removal of Native American human remains and objects from federal or tribal lands. In addition to intentional excavation and removal, NAGPRA governs the inadvertent discovery of Native American cultural items on federal or tribal lands: "Any

- 4 -

person who knows, or has reason to know, that such person has discovered Native American cultural items on Federal or tribal lands after November 16, 1990, shall notify, in writing, the Secretary of the [Interior], or head of any other agency or instrumentality of the United States, having primary management authority with respect to Federal lands and the appropriate Indian tribe ... with respect to tribal lands, if known or readily ascertainable.... If the discovery occurred in connection with an activity, including (but not limited to) construction, mining, logging, and agriculture, the person shall cease the activity in the area of the discovery, make a reasonable effort to protect the items discovered before resuming such activity, and provide notice under this subsection. Following the notification under this subsection and upon certification by the Secretary of the [Interior] or the head of any agency or instrumentality of the United States or the appropriate Indian tribe ... that notification has been received, the activity may resume after 30 days of such certification." 25 U.S.C. § 3002(d)(1) (2001).

23.  As with Native American cultural items intentionally excavated or removed, cultural items that are inadvertently discovered are subject to the ownership and control provisions of 25 U.S.C. § 3002(a). In addition to requiring the discoverer to report the inadvertent discovery of Native American cultural items, the regulations implementing § 3002(d) impose six additional obligations on responsible federal agency officials who receive notification that Native American cultural remains have been inadvertently discovered on federal lands. Having received notification of an inadvertent discovery, the responsible federal agency must, within three working days from notification: (1) certify receipt of the notification; (2) take immediate steps, if necessary, to further protect the cultural items, including, as appropriate, stabilization or covering; (3) notify Indian tribes that may be entitled to ownership or control of the cultural items under the Act; (4) initiate consultation on the inadvertent discovery pursuant to 43 C.F.R. § 10.5 (governing consultation with Indian tribes); (5) follow the provisions of 43 C.F.R. § 10.3(b) (governing intentional excavation or removal) if the cultural items must be excavated or removed; and (6) ensure that the disposition of the cultural items is carried out following 43 C.F.R. § 10.6 (governing custody of Native American cultural items). See 43 C.F.R. § 10.4(d)(1).

## VI.   FACTUAL ALLEGATIONS

24.   The Winnemem Wintu Tribe and its ancestors have lived in the Shasta Lake and McCloud River area of California for six thousand years. The Tribe's historic and cultural sites exist throughout this region. The Defendant United States Forest Service has failed to protect these historic and cultural sites from degradation and harm despite the Winnemem's continuing protests. The damage, desecration and harms are on-going.

**A.   Nosoni Creek**

25.   Nosoni Creek is a historic and cultural site that contains the remains of past human life including structures, graves, skeletal remains, pottery and tools. It is also the site of pre-historic house pits, a section of a pre-historic trail, and the remains from a tribal hunting cabin built in or about 1867. Members of the Winnemem Wintu Tribe lived at the site until the 1980s. The Winnemem had initiated hunts from the site as far back as pre-1800.

26.   In 2000, Defendant USFS began a project to replace the Nosoni Creek bridge. The USFS allowed construction workers to cut down an oak tree and three ancient "grandfather" grapevines used as medicine by the Tribe for over 100 years. This caused serious and direct harm to the Winnemem culture because the sacred vines and roots are now destroyed and worthless for medicinal uses and, as a heritage, lost to future generations.

27.   During the bridge replacement project, the USFS caused further harm to the Nosoni Creek site by dumping dirt on a sacred site without any archaeological monitoring or guidance, and bulldozing and filling in a vegetated area, rending a ceremonial area for storytelling totally inaccessible. The Winnemem had informed the USFS of the cultural importance of the site, but it was destroyed anyway.

28.   In 2001 and 2002, the USFS allowed a truck ramp to be built leading to the creek. Logging trucks use this ramp four to five times a day, every day, when they drive over the site, park their trucks on the ramp, and draw water from the creek. The trucks spill diesel onto the site and into the creek every day. This activity has destroyed precious archaeological resources at the site.

29.   The Winnemem Tribe was not notified before commencement of the bridge replacement or truck ramp projects, and the USFS did not allow any public consultation process.

- 6 -

1 Nor did the USFS conduct any environmental analysis before undertaking the truck ramp project.
2 Despite the Winnemem's repeated complaints, USFS has done nothing to remedy any of the alleged
3 harms flowing from that project.

4       30.      The Winnemem have contacted Defendants to open a dialogue and request a meeting
5 with the USFS to discuss all of the above harms to the Nosoni Creek site, but the USFS has failed to
6 adequately respond to the Winnemem's concerns.  Although work was done in July 2010 to fix the
7 problems with the truck ramp, USFS excluded the Winnemem from discussions about how to
8 mitigate any damage.

      **B.**      **Dekkas and Gilman Road Shaded Fuelbreak Project**

10       31.      The Dekkas site is a rock island that rises above the McCloud River.  In pre-historic
11 times, Dekkas contained a lower bench where Manzanita grew, a middle bench that included a dance
12 circle, cisterns and a sacred fire pit, and an upper bench with numerous pit houses.  Former Spiritual
13 Leader Florence Jones used the fire pit for healing activities until her death in 2003.  The fire pit was
14 surrounded by sacred rocks used to tell the journey of life of the Tribe, and the cisterns were used in
15 a doctoring ceremony.  The Winnemem attended to several trees on the site that were used in
16 religious rituals.

17       32.      In 2005, the USFS consulted with the Tribe regarding the site, agreed that the old-
18 growth Manzanita was an important cultural resource, filed a protection plan, and tagged the area to
19 be preserved.  Wood from these Manzanita trees provided the sole source of fuel for the fire pit
20 during ceremonies and the spring celebration at Dekkas.  Nonetheless, in February 2005, the USFS
21 destroyed the Manzanita.  The USFS violated their agreement with the Winnemem when they cut
22 with Manzanita without an archaeologist or tribal representative onsite.  Through their actions, there
23 is no longer any old-growth Manzanita to use in the culturally vital Dekkas ceremony.

24       33.      The site has been further damaged in other ways.  The USFS allows open access to
25 the site, which has led to ongoing damage from camping, the use of ATVs and other recreational
26 activities.  The damage includes vehicles driving over dance grounds, burning trash and dislodging
27 rocks around the sacred fire pit.  Despite repeated requests, the USFS has failed to develop a
28 mitigation plan to address the damage.

34. The USFS implemented the Gilman Road Shaded Fuelbreak project on the Dekkas site in 2001, 2003 and 2005. This project has also damaged culturally important trees on the site that the Tribe had cultivated. Although this project was completed in 2005, related ongoing cleanup continues to harm important resources. The USFS did not consult with the Winnemem during the planning and execution of the project even though the Tribe requested consultation. Nor did Defendants conduct an adequate evaluation of the land as required under the NHPA.

### C. Coonrod Flat Cultural Site

35. Coonrod Flat is a large, open, dry meadow on the lower slopes of Mt. Shasta, bordered by Ash Creek to the north and old river beds to the south. The site includes a pre-historic village with a fire pit used for the August Ceremony, and house pits to the northeast along the creek. The site is listed on the National Register of Historic Places ("National Register").

36. The USFS permits campers, hikers, hunters and off-road vehicles to trespass over ceremonial areas causing damage to the site. In 2005, the USFS issued a grazing permit for a 5,000 acre allotment to a rancher, allowing cattle to trample over and defecate on the sacred fire pit area. The cattle have also created 6-8 inch deep crevices in the ground, and degraded the riparian area, leading to and around Ash Creek.

37. The USFS has also permitted the Coonrod site to be used as a shooting range, which has resulted in littering of shell casings and clay pigeon fragments on ceremonial grounds. To limit the damage from cattle, campers and hunters, the Winnemem requested to rebuild a fence to control access to the site, but the USFS did not respond.

### D. Buck Saddle Prayer Site

38. The Buck Saddle Prayer Site is an historic site due to its age and association with historic spiritual and religious activities. The large prayer rock at the site is a documented archaeological site. In 2007, the USFS allowed damage to the site when it permitted the construction of a bike path on the Clikapudi trail, which leads to the prayer rock. The USFS funded and approved the bike trail project without developing a protection plan for the site or consulting with the Winnemem regarding protection of the prayer rock. The USFS failed to perform an environmental analysis on the effects of the bike path as required under NEPA.

39. The Clikapudi bike path has disturbed and damaged the prayer rock site. Despite repeated complaints by the Tribe, the USFS has failed to address this continuing harm, and it has failed to develop a plan of mitigation or protection of these resources. Instead, it has exacerbated the problem by connecting several bike paths to the one leading to the prayer rock, thereby increasing traffic and compounding the harm.

### E. Rocky Ridge

40. Rocky Ridge is a pre-historic village site connected to a larger village complex. The village contained approximately 15 house pits and a burial site, thus it likely contains remains of human culture, including food stuffs, broken crockery, stone and metal tools, and organic matter. The site is eligible for listing on the National Register due to its age, its association with historic events such as doctoring, herbal medicine, cultural and religious ceremonies, and its potential to yield archaeological resources.

41. Jones Valley Resort operates a permitted parking lot near the site. Over the last decade, the resort has used the Rocky Ridge site adjacent to the permitted parking lot as an overflow parking lot for recreational vehicles and boat trailers. The USFS maintains a gate to prevent access to the site, but the agency has allowed the resort to install its own lock on the gate thereby enabling it to use the lot for parking. Although the Winnemem have complained to the USFS about the parking lot and the resulting damage to its resources, the agency has not responded.

### F. Antler's Bridge Site

42. The Antler's Bridge site is the location of a large village and burial sites from the pre-contact era through the 1930s. The village site, located on USFS land, was disrupted by construction of the Sacramento River (Antler's) Bridge in the 1940s. The development and flooding of the Shasta Dam required the removal of many burial sites, but only identifiable human remains were exhumed. Human remains that were not exhumed have been found at the site as late as the 1980s, and other archaeological artifacts were discovered there in 2010.

43. The Antler's Bridge project involves replacing the original Sacramento River Bridge with a new five-span concrete bridge. The structure is being constructed on a parallel alignment just

east of the existing bridge, which spans the Sacramento River arm of Shasta Lake. Groundbreaking was in 2010 and the project is expected to take five years.

44.     Before bridge construction started, the Winnemem warned the USFS that unmonitored excavation could harm the historic village site. On January 11, 2010, construction crews working on the Antler's Bridge project dug through a deep and extensive midden layer that was part of a sacred village site. As the primary public land manager of this area, the USFS was responsible for the care and protection of archaeological resources that were excavated. USFS did not order a halt to work in the area as required under the ARPA and NAGPRA. Instead, further excavation of footings occurred causing more midden to be removed from the site.

45.     Plaintiff Caleen Sisk immediately asked the USFS and CalTrans to handle the midden in an appropriate and protective manner, but her request was ignored. She further asked the USFS and CalTrans to sift the midden for burial remains as there was a recorded burial in the work area. Again, the USFS and CalTrans ignored her request. The USFS was responsible for monitoring CalTrans activities on the site to ensure compliance with statutes governing inadvertent excavation of archaeological resources, including the ARPA and NAGPRA. It failed in these monitoring duties.

46.     One cultural artifact that Spiritual Leader Sisk discovered was a smooth round rock that she identified to the USFS as a medicine rock, an object that was used for spiritual healing. Although the ARPA and NAGPRA require consultation with Tribes to inventory and repatriate cultural resources, USFS confiscated the rock and refused to disclose what it did with it.

47.     The ARPA required the USFS, as the federal land manager, to follow NAGPRA for the notification and consultation of Native American tribes and groups and the protection and final disposition of artifacts inadvertently excavated on USFS managed land. The Winnemem have requested the return of any and all artifacts discovered at the Antler's Bridge site as required by NAGRPA, but to date the USFS has refused. The Winnemem have never been told how the midden that was excavated was handled and ultimately placed; if the midden was sifted for burial remains; what items were found; where these items are presently stored; and who has custody. All of these things were required under the ARPA and NAGPRA.

48.     According to a CalTrans report, the "inadvertent effects" of its excavation at the sacred site "were resolved with completion of an MOA" with various federal agencies, including the USFS, and "five Wintu tribes". The Winnemem Wintu were not one of the Tribes. The USFS and CalTrans never consulted the Winnemem about the "inadvertent effects" of their excavation. The Tribe has no knowledge of the purported MOA signed by five Wintu tribes. Rather, the Winnemem were entirely excluded from the NAGPRA consultation process.

49.     In 2010, *after* the discovery of archaeological resources at the Antler's Bridge site, USFS issued an ARPA permit to CalTrans to conduct further work at the cultural and historic site. Under the ARPA, given the prior discovery of artifacts there, the USFS was required to notify interested parties, including the Winnemem, if excavation under this permit might result in more harm to its cultural or religious sites. 16 U.S.C. §470cc(a)-(c). The USFS provided no such notification and it has not consulted with the Winnemem to protect against such harm. Damage is ongoing.

## VII.    CLAIMS FOR RELIEF

**A.     First Claim for Relief: Violation of NHPA, NEPA and the APA (Damage to Nosoni Creek Cultural Site and Creek)**

50.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 - 39 of this Complaint.

51.     The NHPA requires the government to preserve and avoid damaging cultural resources belonging to or affiliated with Indian tribes, and to take into account the effect of federal projects on properties of traditional religious and cultural importance to tribes. The NEPA requires the federal government to consider environmental and cultural values when assessing federal projects, fully disclose potential project impacts to affected Indian tribes, and take all possible measures to preserve and protect historic, cultural and natural aspects of the national heritage.

52.     Defendants violated the NHPA by: failing to identify Nosoni Creek as a historic site; failing to undertake a 106 process in conjunction with federal undertakings at a site eligible for the National Register; and approving a 2000 bridge project and subsequent truck ramp project at Nosoni Creek, a historical site, without engaging in the consultation process required by NHPA. The

- 11 -

Winnemem have requested consultation regarding the bridge and truck ramp projects throughout their implementation, but the USFS has ignored their requests. These violations of NHPA have led to degradation of the site and the USFS has failed to avoid or mitigate these adverse effects.

53. Defendants violated the NEPA by: failing to initiate a NEPA process and failing to conduct an EIS or EA with regard to the "major federal action" of building a truck ramp on the Nosoni Creek site. The construction of the truck ramp is causing cumulative and ongoing damage to the site, as logging trucks drive over the Nosoni Creek, site, park on the truck ramp, and draw water from the creek four or five times per day. These violations of the NEPA led to the degradation of this cultural site, contamination of a sacred creek with diesel fuel, and alteration of the historic characteristic of the site and the USFS has failed to avoid or mitigate these adverse effects.

54. The Winnemem tribe has repeatedly complained about these violations. Defendants have done nothing to remedy them. Defendant's failure and refusal to respond to the Winnemem's complaint is a final agency action for which there is no other adequate remedy in a court, reviewable in accordance with 5 U.S.C. §§ 704 and 706, and the Winnemem have exhausted all administrative remedies.

55. Each of the Defendant's violations of the NEPA and NHPA are actions "not in accordance with the law," resulting in violations of the Administrative Procedures Act. 5 U.S.C. § 706(2)(A). The Defendant's conduct also renders Defendant's actions, findings and conclusions arbitrary and capricious, and an abuse of discretion in violation of 5 U.S.C. § 706(2)(A). Plaintiffs have no plain, speedy, and adequate remedy in the course of law and absent immediate judicial intervention, Plaintiffs will suffer irreparable injury.

56. Relief requested: The Winnemem seek a declaratory judgment that Defendant's acts and omissions violate the NEPA, NHPA and APA, and a preliminary and permanent injunction against further harm to the Nosoni Creek Cultural Site and Nosoni Creek itself.

**B.     Second Claim for Relief: Violation of the NHPA and the APA (Interference with Winnemem's Use of Cultural Property at Dekkas)**

57. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 - 45 of this Complaint.

58. Defendants have violated and continue to violate the NHPA by failing to engage in meaningful consultation in connection with the Gilman Road Shaded Fuelbreak project on the Dekkas site. The USFS has also violated its Programmatic Agreements related to the Dekkas site under NHPA by: (1) cutting and destroying cultural resources at the site; (2) failing to include an accurate report on the destruction of the Manzanita in annual reports; (3) failing to monitor project activities at the site; (4) failing to make annual reports available to the public; and (5) failing to comply with public participation requirements.

59. The Winnemem objected to these violations of laws requiring preservation of their religious and cultural values. Defendant did nothing to stop the violations. Defendant's failure and refusal to respond to the Winnemem's complaints constitutes final agency action for which there is no other adequate remedy in a court, reviewable in accordance with 5 U.S.C. §§ 704 and 706, and the Winnemem have exhausted all administrative remedies.

60. Each of the Defendant's violations of the NHPA are actions "not in accordance with the law," resulting in violations of the Administrative Procedures Act. 5 U.S.C. § 706(2)(A). The Defendant's conduct also renders its actions, findings and conclusions arbitrary and capricious, and an abuse of discretion in violation of 5 U.S.C. § 706(2)(A). Plaintiffs have no plain, speedy, and adequate remedy in the course of law and absent immediate judicial intervention, the Winnemem will suffer irreparable injury.

61. Relief requested: The Winnemem seek a declaratory judgment that Defendant's acts and omissions violate the NHPA and the APA; a preliminary and permanent injunction against further harm to the Dekkas Site.

**C.  Third Claim for Relief: Violation of the NHPA and the APA (Desecration of Coonrod Cultural Site)**

62. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 - 50 of this Complaint.

63. Defendants violated and continue to violate the NHPA by granting a permit to graze cattle on 5,000 acres of land on the Coonrod site. A section 106 process was required before granting the permit, yet the USFS did not engage in that process.

- 13 -

64.     The Winnemem complained about these violations, but Defendant did nothing to remedy them.  The Defendant's failure and refusal to respond to the Winnemem's complaint is final agency action for which there is no other adequate remedy in a court, reviewable in accordance with 5 U.S.C. §§ 704 and 706, and the Winnemem have exhausted all administrative remedies.

65.     Defendant's violation of the NHPA are actions "not in accordance with the law," resulting in violations of the Administrative Procedures Act. 5 U.S.C. § 706(2)(A).  The Defendant's conduct also renders its actions, findings and conclusions arbitrary and capricious, and an abuse of discretion in violation of 5 U.S.C. § 706(2)(A).  The Winnemem have no plain, speedy, and adequate remedy in the course of law and absent immediate judicial intervention, the Winnemem will suffer irreparable injury.

66.     Relief requested: A declaratory judgment stating that Defendant's acts and omissions violate the NHPA; a preliminary and permanent injunction against further damage to the Coonrod Cultural Site.

### D.     Fourth Claim for Relief: Violation of NHPA, NEHA and the APA (Damage to Buck Saddle Prayer Site)

67.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1- 55 of this Complaint.

68.     Defendants violated the NHPA and NEPA by creating a recreational bike trail and placing it directly through one of the Winnemem's sacred prayer sites; failing to disclose potential project impacts to the Winnemem tribe before creating the bike trail, and failing to take all possible measures to preserve and protect the sacred prayer site.  Defendants continue to violate the NHPA and NEPA by enabling on-going degradation of ecosystems and natural resources at the site; permitting common access to the site without taking steps to protect sacred artifacts and areas; enabling on-going degradation of known archeological sites; and enabling degradation of a prayer site by converting a sacred prayer rock into a bike ramp for dirt bike riders.

69.     Defendant's failure to develop a protection plan or consult with the Winnemem before permitting the bike path violates the NHPA.  Defendant's failure to perform any environmental analysis on the effects of the bike path violates the NEPA.

1    70.    The Winnemem objected to those violations, but Defendant did nothing to cure them. 2 Defendant's failure and refusal to respond to the Winnemem's complaint is final agency action for 3 which there is no other adequate remedy in a court, reviewable in accordance with 5 U.S.C. §§ 704 4 and 706, and the Winnemem have exhausted all administrative remedies.

5    71.    Each of the Defendant's violations of the NHPA and NEPA are actions "not in 6 accordance with the law," resulting in violations of the Administrative Procedures Act. 5 U.S.C. § 7 706(2)(A). The Defendant's conduct also renders its actions, findings and conclusions arbitrary and 8 capricious, and an abuse of discretion in violation of 5 U.S.C. § 706(2)(A). The Winnemem have no 9 plain, speedy, and adequate remedy in the course of law and absent immediate judicial intervention, 10 the Winnemem will suffer irreparable injury.

11   72.    Relief requested: A declaratory judgment that Defendant's acts and omissions violate 12 the NHPA, NEPA and the APA; a preliminary and permanent injunction against further violations 13 and damage to the Buck Saddle Prayer Site.

14   **E.    Fifth Claim for Relief: Violation of NHPA and the APA (Damage to Rocky**
15   **Ridge)**

16   73.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 - 61 of 17 this Complaint.

18   74.    Rocky Ridge is a site eligible for the National Register due to its age and association 19 with tribal history. With the tacit approval of the USFS, the Jones Valley Resort uses the site as an 20 overflow parking lot. The USFS has not completed a Section 106 process as required by the NHPA 21 and Advisory Council regulations to avoid, minimize, or mitigate the adverse effects of the parking 22 lot.

23   75.    The Winnemem objected to those violations, but Defendant did nothing to cure them. 24 Defendant's failure and refusal to respond to the Winnemem's complaint is final agency action for 25 which there is no other adequate remedy in a court, reviewable in accordance with 5 U.S.C. §§ 704 26 and 706, and the Winnemem have exhausted all administrative remedies.

27   76.    Each of the Defendant's violations of the NHPA and NEPA are actions "not in 28 accordance with the law," resulting in violations of the Administrative Procedures Act. 5 U.S.C. §

706(2)(A). The Defendant's conduct also renders its actions, findings and conclusions arbitrary and capricious, and an abuse of discretion in violation of 5 U.S.C. § 706(2)(A). The Winnemem have no plain, speedy, and adequate remedy in the course of law and absent immediate judicial intervention, the Winnemem will suffer irreparable injury.

77. Relief requested: A declaratory judgment that Defendant's acts and omissions violate the NHPA, NEPA and the APA; a preliminary and permanent injunction against further violations and damage to the Buck Saddle Prayer Site.

**F.     Sixth Claim for Relief: Violation of ARPA and the APA (Interference with and Failure to Protect Archaeological Resources at the Antler's Bridge Site)**

78. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 - 66 of this Complaint.

79. Rather than consult with the Winnemem after becoming aware that construction workers inadvertently discovered sacred objects at the Antler's Bridge site, , the USFS excluded the Winnemem from meetings to develop a plan to resolve the inadvertent effects of the excavation; the USFS excluded the Winnemem from the consultation process leading to the grant of an ARPA permit for further excavation at the Antler's Bridge site; and it failed to consult with the Winnemem regarding planned excavation of the site pursuant to the ARPA permit.

80. The Winnemem objected to those violations, but Defendant did nothing to cure them. Defendant's failure and refusal to respond to the Winnemem's complaint is final agency action for which there is no other adequate remedy in a court, reviewable in accordance with 5 U.S.C. §§ 704 and 706, and the Winnemem have exhausted all administrative remedies.

81. Each of the Defendant's violations of the ARPA are actions "not in accordance with the law," resulting in violations of the Administrative Procedures Act. 5 U.S.C. § 706(2)(A). The Defendant's conduct also renders its actions, findings and conclusions arbitrary and capricious, and an abuse of discretion in violation of 5 U.S.C. § 706(2)(A). The Winnemem have no plain, speedy, and adequate remedy in the course of law and absent immediate judicial intervention, the Winnemem will suffer irreparable injury.

1   82.     Relief requested: A declaratory judgment that Defendant's acts and omissions violate
2 the ARPA and the APA; a preliminary and permanent injunction against further violations and
3 excavation of archaeological artifacts at the Antler's Bridge site until the USFS has complied with
4 the provisions of ARPA.

## VIII.   PRAYER FOR RELIEF

6   83.     For a declaratory judgment that Defendant has violated and is violating the NHPA by
7 failing to take into account the effect of federal projects on sites included or eligible to be included
8 on the National Register, including but not limited to projects permitting public recreational
9 activities at the Dekkas Site, Coonrod Cultural Site, Buck Saddle River Prayer Site, and Rocky
10 Ridge Village Site.

11   84.     For a declaratory judgment that Defendant has violated and is violating the NEPA by
12 failing to consider environmental and cultural values when assessing proposed federal projects on
13 sacred sites along the McCloud River; failing to engage in good faith consultation with and fully
14 disclose all relevant information to the Winnemem in connection with those projects; and failing to
15 use all practicable means to preserve important historic, cultural and natural aspects of the natural
16 heritage at existing and planned project sites.

17   85.     For a declaratory judgment that Defendants have violated and are violating the NHPA
18 by failing to preserve and avoid damaging cultural resources belonging to or affiliated with the
19 Winnemem Wintu tribe.

20   86.     For appropriate preliminary and permanent injunctive relief to ensure that defendants
21 fully comply with the ARPA, NHPA and NEPA, the implementing regulations for each of these
22 laws, and the APA.

23   87.     For a writ of mandamus compelling the agency Defendant to cease all plans for
24 federal projects that may impact traditional resources of religious and cultural importance until such
25 time as the agencies have complied with their obligations to protect those resources pursuant to
26 federal law, regulation and policy, as well as to enter into meaningful pre-decision consultation
27 regarding the projects with the Winnemem, as required by federal statutes, regulations and executive
28 orders;

88. Costs, fees and expenses, and reasonable attorneys' fees and expenses, pursuant to and in accordance with the Equal Access to Justice Act [28 U.S.C. § 2412 and 5 U.S.C. § 552(a)(4)(E)] and the National Historic Preservation Act [16 U.S.C. § 470W-4]; and

89. Retain jurisdiction of this action to ensure compliance with its decree; and

90. Such other and further relief as this honorable Court may deem just and proper.

DATED: August 7, 2014

                REED SMITH LLP
                By  /s/ Jayne E. Fleming
                      Jayne E. Fleming
                      Attorneys for Plaintiffs

REED SMITH LLP
A limited liability partnership formed in the State of Delaware